## 31641. WILLIAMS v. THE STATE.

HILL, Justice.

Defendant Willie James Williams, a juvenile, was tried and convicted in Baldwin Superior Court of the offense of murder. He appeals from his life sentence. The main issue before us concerns his confession to the police.

The body of 74-year-old Mrs. Frances Herrin was found on the back porch of her home on April 14, 1973, about 7:30 p.m. She had been strangled to death.

A few days later police learned that two diamond rings and a wedding band had been pawned by some boys. The pawn ticket bore the name of John Williams, older brother of the defendant. The police went to the Williams' home and asked and received permission from the parents to talk with the boys and search the house. They took the boys to the pawn shop where they picked up the rings and then to the police station for questioning. John Williams was interrogated first. He made a statement connecting the defendant with the rings. At this point according to police the defendant, who was 14 years old, and his parents were informed of his rights and the nature of the possible charges against him. Both the defendant and his parents signed a waiver of counsel. The defendant then confessed to the crime in the presence of his parents and law enforcement officers. The next day the police took the defendant to Mrs. Herrin's house and he showed them how he had entered, the bureau where he got the rings, and where Mrs. Herrin was when he strangled her.

On April 20, 1973, the defendant was placed in Central State Hospital for examination and evaluation, where he remained until January 15, 1974. Prior to trial, he made a special plea of insanity. After hearing evidence, the court found that he was competent to stand trial and directed a verdict for the state. On February 21, 1974, he

was brought to trial.

At trial the defendant's brother testified that the defendant accompanied him and two friends to a pawn shop on April 15, 1973, where the defendant pawned some rings. The friends' testimony was to the same effect. The victim's niece identified the rings as belonging to the victim.

A police officer testified that the defendant's fingerprints matched those he had lifted from a glass found in the victim's kitchen.

After a lengthy Jackson-Denno hearing, the court determined that defendant's confession was admissible and permitted Investigator King to read his report of defendant's statement. According to that statement, on April 14, 1973, at about 10 in the morning the defendant left his home and went into town. He went to the bus station where he played the pinball machines and won ten dollars. He then went to a pool room and lost twenty dollars. He wandered around getting madder and madder. He stopped at a house and asked a lady if she had any work. He also asked her for a glass of water. He drank the water in the kitchen. They stepped back onto the back porch and "he went wild; all he could think was kill, kill, kill." He grabbed her and choked her and she went down onto the floor. He ran into the bedroom, picked up some rings off the dresser, and took money out of her pocketbook. He went into the other rooms in the house and then ran out the back door to the bus station. He bought a ticket to Brown's Crossing. He got off the bus and stopped at a bridge. He thought of what he had done and wanted to kill himself, but he could not do it. He fell on some rocks at the creek and hurt his side. Then he went home and went to sleep. The next day he pawned the rings for $40.

The assistant chief of police testified to a shoe print found in the dust just inside a door on the victim's back porch. The defendant's shoe fit the print exactly. A bus ticket was found in his pocket when he was arrested.

The defendant's parents testified to the events that occurred at the police station the night the defendant confessed. His mother told of defendant's history of epilepsy, although she conceded that he appeared to be acting normally on the day of the murder.

Dr. Baugh, the defendant's physician, testified that he had treated the defendant for epilepsy. Dr. Bosch, a psychiatrist at Central State Hospital, stated that a complete physical and mental examination had been conducted on the defendant and that although the defendant is in the area of borderline mental retardation, IQ between 69 and 84, he is capable of understanding everything that he does. Three electroencephalograms were run on the defendant testing for epilepsy. The results were normal on all three tests. The defendant had no epileptic seizure for the nine months he was observed at Central State Hospital. According to Dr. Bosch, a person with early childhood epilepsy is unlikely to continue into adulthood with this disease. He concluded, based on the history, observations and tests, that the defendant is not an epileptic.

The defendant took the stand and gave a different version of his actions on April 14, 1973, from that contained in his confession. He said that on April 14, after he played the pinball machines, he stopped at one house where he asked for water and for permission to use the bathroom. While in the bathroom he slipped and bumped his head. The next thing he remembered was that he had hit the woman over the head with a bottle. He left that house and after resting under a bridge for a little while he stopped at the victim's house and again asked for a glass of water. She gave him water in the kitchen and the next thing he remembered was seeing her lying on the floor of the back porch. He went back inside the house toward the front door, saw the rings on the bureau and picked them up as he left. He also said that while he was at the pool hall he had asked for an aspirin because he had a headache and that he had been given a white pill with a cross on it.

1. Citing *M. K. H. v. State of Ga.*, 135 Ga. App. 565 (2) (218 SE2d 284) (1975), the defendant contends that he was held illegally in violation of Code Ann. § 24A-1402 (a) and that therefore the statement he gave to the police during such detention was illegally obtained and inadmissible. Code Ann. § 24A-1402 concerns release or delivery to court of a child taken into custody. It provides: "(a) A person taking a child into custody, with all

reasonable speed and without first taking the child elsewhere, shall: (1) forthwith release without bond the child to his parents . . .; or (2) bring the child before the juvenile court or deliver him to a detention or shelter care facility designated by the court. . . He shall promptly give written notice thereof, together with a statement of the reason for taking the child into custody, to a parent . . . and to the court. Any temporary detention or questioning of the child necessary to comply with this subsection shall conform to the procedures and conditions prescribed by this Code [Title 24A] and rules of court; or (3) bring the child who committed a delinquent act before the superior court of the county where the delinquent act occurred if the act is an act over which the superior court has concurrent jurisdiction. . ."

The defendant and his brother were taken from their home to the police station. The boys agreed to accompany the police and the parents gave their permission. On the way, the police stopped at the pawn shop to pick up the rings, but no questions were asked of the two boys nor was this a delay of any length. A police officer called the superior court judge, who is also the juvenile court judge in Baldwin County, advised him of the detention and discussed the availability of legal counsel if requested. The defendant's parents came to the police station and according to police were told the nature of charges, were advised of the defendant's constitutional rights, and signed a waiver of counsel. The defendant confessed in the presence of his parents. We find that there was compliance with Code Ann. § 24A-1402 (a), that the defendant's detention was lawful and therefore that his confession was not inadmissible.

The defendant also maintains that his confession was inadmissible in that he did not knowingly and voluntarily waive his constitutional rights. Before admitting the confession into evidence the trial judge held a lengthy Jackson-Denno hearing. At the time of confessing, the defendant was fourteen years old with an IQ between 69 and 84. He was in the ninth grade, but read at a third grade level. Two police officers testified that the defendant was told he was a murder suspect, that both he and his parents were informed of his constitutional rights,

and that all three signed a waiver after the police felt that they fully understood his rights. One of the policemen testified that the parents, in addition, said the defendant could be questioned without an attorney present.

The defendant's father is unable to read or write. He signed the waiver with an X mark. The mother can read and write a little. They testified that they could not remember any rights being read to them and that they did not understand what was happening that evening at the police station, although they were present while the defendant was questioned. The defendant also stated that he did not know of his right to have an attorney at the time he was questioned.

At the conclusion of the hearing, the court held the confession to be admissible. On appeal the defendant contends that neither he nor his parents knowingly and intelligently waived his constitutional rights.

In *Riley v. State,* 237 Ga. 124 (226 SE2d 922) (1976), we refused to require an automatic exclusion of a confession of a fifteen-year-old even where his parents were not separately advised of his rights. We found that "the question of a voluntary and knowing waiver depends on the totality of the circumstances and the state has a heavy burden in showing that the juvenile did understand and waive his rights." *Riley v. State,* supra, at 128. We found that the totality of the circumstances is to be determined by consideration of the nine factors set out in West v. United States, 399 F2d 467, 469 (5th Cir. 1968), cert. den. 393 U. S. 1102 (1969), which are; "(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge. . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogation; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date."

Here the defendant was only 14 and had limited

education to aid him in making an intelligent waiver. However, according to the testimony of police officers which we must accept in view of the decision of the trial judge, the defendant and his parents were told of the charge and advised of his rights; any delay in commencing interrogation of the defendant was caused by interrogation of his older brother; no harrassment or tricks were used; his parents were present while he was questioned; the defendant confessed almost as soon as the police asked him what happened; he had not refused to answer questions earlier. We find under the totality of the circumstances that the trial court did not err in admitting his confession.

The defendant urges that he should have been advised that the superior court judge had given the police the name of an attorney to be called if one were requested by the defendant. According to the evidence the defendant and his parents were advised of his right to consult with an appointed attorney. This right they waived. The law does not require that they be advised of the name of the attorney to be appointed if one is requested. We find no error in the admission of the defendant's confession. It follows then that there was ample evidence to support the verdict of guilty of murder and the court did not err in overruling the general grounds of defendant's motion for new trial.

2. The defendant argues that the trial court erred in overruling his motion to quash the indictment based on the ground that the juvenile court never held a transfer hearing as allegedly required by Code Ann. § 24A-2501. A transfer hearing in juvenile court pursuant to Code Ann. § 24A-2501 is required only "(a) After a petition has been filed alleging delinquency based on conduct which is designated a crime. . ." No petition alleging delinquency was filed in juvenile court in this case and hence no transfer hearing in that court was required. *Brown v. State,* 235 Ga. 353 (219 SE2d 419) (1975); *Relyea v. State,* 236 Ga. 299 (223 SE2d 638) (1976). Subsection (c) of that section does not enlarge the scope of the section beyond that specified in subsection (a). See comment to subsection (c) in the annotated Code.

3. Prior to trial the defendant made a special plea of

insanity. At the conclusion of the presentation of evidence at the trial of this issue, the court directed a verdict for the state. The defendant contends this was error. Trial of a special plea of insanity (i.e., insanity at time of trial) is civil in nature (*Bacon v. State,* 222 Ga. 151 (1) (149 SE2d 111) (1966), *Lingo v. State,* 224 Ga. 333, 340 (162 SE2d 1) (1968)), and the burden of producing evidence of insanity is upon the defendant (*Coker v. State,* 234 Ga. 555, 561 (216 SE2d 782) (1975)). Where there is no evidence to support the defendant's contention that he is insane at time of trial, it is not error for the court to direct a verdict for the state as to this issue. See *Bacon v. State,* supra, where the court found that the evidence demanded a finding of sanity.

4. The defendant was indicted, tried and convicted for the offense of murder. He contends that because he was also indicted for robbery, the state should not have been allowed to proceed on the murder indictment and leave the robbery indictment outstanding against him. There is no merit in this enumeration. Code Ann. § 26-506.

The defendant contends that the court erred in allowing evidence of the robbery of the murder victim to be introduced and erred in not deleting references to the robbery from the confession. The evidence of the defendant's pawning the victim's rings on the day after the murder was relevant and material to the state's proof that the defendant committed the murder.

5. The defendant requested the state's list of witnesses. The state furnished a list. On Monday or Tuesday before the defendant's trial began on Thursday the district attorney called the defense attorney's office and gave his secretary four additional names. Defense counsel learned of these names on Tuesday prior to arraignment and trial on Thursday. These names were furnished defense counsel in writing on Thursday prior to arraignment. The four witnesses were called at trial and permitted to testify over the defendant's objection. He contends that this was error in violation of Code Ann. § 27-1403. The list of names was furnished prior to arraignment. That is the requirement of § 27-1403. We find no violation of that Code section.

6. While defense counsel was cross examining one of

the police officers about the father's waiver of his and the defendant's Miranda rights, the special prosecutor objected, saying that " . . . the law does not give the mother and father a right. He's just doing it through courtesy in order that the son may understand it. They don't have to warn the mother and father. They have no waiver." The trial judge overruled the prosecutor's objection. The defendant contends that the trial court should have, on its own motion, rebuked the prosecutor for a misstatement of the law and given curative instructions to the jury. The trial court overruled the special prosecutor's objection and permitted the defense questioning to continue. In the absence of any motion by the defendant, we find no error.

Defendant urges that the trial court erred in that it did not charge the jury on its own initiative that the police officers had a duty to obtain a knowing and intelligent waiver of the defendant's constitutional rights from his parents before questioning the defendant. The court did not err in failing to charge as the defendant suggests. *Riley v. State,* 237 Ga. 124, supra.

7. The defendant urges that the trial court erred in failing to charge the jury on epilepsy. The court charged that the defendant shall be found not guilty if at the time of the act, omission, or negligence constituting the crime, he did not have the mental capacity to distinguish between right and wrong. He also charged that the jury could find the defendant guilty, not guilty, or not guilty by reason of insanity. We do not find that the failure to charge on the disease of epilepsy itself was reversible error.

*Judgment affirmed. All the Justices concur.*

ARGUED OCTOBER 12, 1976 — DECIDED JANUARY 27, 1977 —
REHEARING DENIED FEBRUARY 8, 1977.

*Gilmore, Waddell & Phillips, Thomas J. Phillips, Jr.,* for appellant.