### 37551. MARSHALL v. THE STATE.

MARSHALL, Justice.

Defendant John Lincoln Marshall, a juvenile, appeals from his convictions in Cobb Superior Court of murder and rape, for which he received two concurrent life sentences. The sole issue before us is whether the trial court erred in overruling his motion to suppress his in-custody confession, allegedly made before there had been a compliance with the requirements of Georgia juvenile law concerning detention. See Code Ann. § 24A-1402 (a) (Ga. L. 1971, pp. 709, 723; 1973, pp. 882, 885; 1977, pp. 1237, 1238). We affirm.

1. The appellant first contends that there was a failure of compliance with the provisions of Code Ann. § 24A-1402, supra, by his being taken first to a police station, rather than one of the four dispositions stipulated in § 24A-1402 (a). However, it has been held in several cases that such a deviation may be reasonable under the circumstances and not per se a violation of the Juvenile Code. See, e.g., *Miller v. State,* 240 Ga. 110 (239 SE2d 524) (1977); *Williams v. State,* 238 Ga. 298 (1) (232 SE2d 535) (1977); *C. R. T. v. State of Ga.,* 148 Ga. App. 628 (252 SE2d 58) (1979); *R. J. v. State of Ga.,* 143 Ga. App. 213 (1a) (237 SE2d 691) (1977). Here, the appellant was advised on two different occasions of his right to be questioned at a place other than the police station, and he and his mother signed a written waiver of this right on an "advice of rights to juveniles" form.[1] Moreover, § 24A-1402 (a) (4) permits a juvenile suspected of committing a delinquent act to be brought before superior court if the act is one over which said court has concurrent jurisdiction. The testimony here was that the appellant was taken by the police station for the purposes of "booking" him for murder and rape (under warrants for which he had been arrested) and securing hair samples

---

[1] This waiver was adequate and effective as to any violation of Code Ann. § 24A-2002 (b).

to be used as evidence. He was then taken directly to the Youth Development Center for detention, as required by Code Ann. §§ 24A-1402 (a) (4) and 24A-1403, and as the police had informed his mother that they would do. Accordingly, the deviation by the police station was a necessary and proper procedure, hence not a violation of the provisions of the Juvenile Code.

2. The appellant further contends that there was a failure of compliance with the Juvenile Code provisions for detention in that his mother was not permitted to accompany him to the police station. It is true that a number of cases refer to the "right" of the juvenile's parents to be present during proceedings under the Juvenile Code. See, e.g., *Crawford v. State,* 240 Ga. 321, 325 (1) (240 SE2d 824) (1977); *Daniels v. State,* 226 Ga. 269, 273 (174 SE2d 422) (1970). There is no provision in the Juvenile Code requiring that one or both parents be present during the questioning. This contended requirement seems to have originated with In re Gault, 387 U. S. 1 (87 SC 1428, 18 LE2d 527) (1967). That case was a delinquency adjudication hearing, rather than one, as here, where the juvenile was arrested under warrant and charged with a capital felony. Thus, In re Gault does not stand for the proposition that the presence of a parent is constitutionally required to make an in-custody statement admissible. (The police testified that the interrogation of the appellant was·desired to be done outside her presence because of the sensitive nature of the subject to be discussed.)

3. In People v. Lara, 67 Cal2d 365, 62 Cal. Rptr. 586, 432 P2d 202 (1967), cert. den., 392 U. S. 945 (88 SC 2303, 20 LE2d 1407) (1968), it was held that a minor has the capacity to make a voluntary confession even in a capital case, without the presence or consent of counsel or other responsible adult, with such absence being just one factor or circumstance to consider in determining voluntariness of the confession. See also generally 47 AmJur2d, Juvenile Courts, etc. 1024, § 50, and the following cases annotated thereunder: King v. State, 373 A2d 292 (Md. App. 1977); Re Appeal in Maricopa County Juvenile Action, 576 P2d 143 (Ariz. 1978); Lee v. State, 561 P2d 566 (Okla. 1977); Myles v. State, 354 S2d 842 (Ala. App. 1977); State v. Young, 552 P2d 905 (Kan. 1976); Parker v. State, 351 S2d 927, 934 (10, 11) (Ala. App. 1977); Doerr v. State, 348 S2d 938 (Fla. App. 1977); State in Interest of Campbell, 344 S2d 711 (La. App. 1977).

In *Riley v. State,* 237 Ga. 124, 128 (226 SE2d 922) (1976), we rejected a per se exclusionary rule to confessions and incriminating statements given outside the presence of the juvenile's parents, as had been applied in *Freeman v. Wilcox,* 119 Ga. App. 325 (167 SE2d 163) (1969). We there held that "the question of a voluntary and knowing waiver depends on the totality of the circumstances," to be

analyzed by a consideration of nine factors promulgated by *West v. United States,* 399 F2d 467, 469 (1968), cert. den. 393 U. S. 1102. Following is an analysis of the facts of this case under the criteria of *Riley:*

(1) *Age of the accused.* At the time of the questioning, the appellant was three days away from his fifteenth birthday. "[A]ge alone is not determinative of whether a person can waive his rights." *Riley,* supra, p. 128. Our courts have approved statements from defendants of similar and lower ages. See *Williams v. State,* 238 Ga. 298, supra (14 years); *C. R. T. v. State,* 148 Ga. App. 628, supra (11 years).

(2) *Education of the accused.* The appellant was in the eighth grade of a school for emotionally disturbed (not mentally retarded) children, and apparently had never had to repeat a grade. There was evidence that he had a grade average of "B"; an IQ of 86 ("almost normal"); a near normal understanding of spoken language; and an ability to give a considered answer to questions, without tending to be overly influenced by what the police may have wanted him to do or say. "A mere showing that one who confessed to a crime may have suffered from some mental disability is not a sufficient basis upon which to exclude the statement." *Corn v. State,* 240 Ga. 130, 136 (240 SE2d 694) (1977) and cits. Our courts have approved statements from defendants with similar and lower IQs. See *Miller v. State,* 240 Ga. 110, supra; *Williams v. State,* 238 Ga. 298, supra; *Goodwin v. State,* 236 Ga. 339 (223 SE2d 703) (1976); *Farley v. State,* 145 Ga. App. 98 (243 SE2d 322) (1978).

(3) *Knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent.* The juvenile court referee testified that he had advised the appellant of his rights on a number of occasions over the appellant's lengthy history with the juvenile court, and that, based upon that, plus the reading of his rights in connection with the present case, he believed that he understood his rights. The appellant had elected whether or not to be represented by an attorney on previous occasions, and in each appearance in juvenile court he had been the decision maker, doing all the talking and not communicating with his mother other than to look at her from time to time. The appellant was aware of the charges against him by the notoriety of the murder in his community and by being informed in the presence of his mother that he was under arrest for rape and murder and later that he was charged with the murder and rape of the named victim.

The appellant was given permission to have a parent present when he gave a prior statement, as he had requested. Although his mother, who was present during this first statement, first requested

prior to the first statement that he be allowed an attorney during the in-custody interrogation, she later signed a waiver including the right to an attorney. She later acquiesced to his giving the statement alone, stating that he could "make up his own mind." He, however, asked that she be present during the first statement, and she was present.

(4) *Whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney.* The appellant was taken into custody at 5:33 p.m. and his statement was completed at 7:54 p.m. During this 2 1/2-hour time, he never asked to consult with anyone and his mother did not call or go to the police station where his statement was given. The appellant was aware of his right of consultation and there is no indication that it would not have been granted if requested, as it had been in the previous questioning.

(5) *Whether the accused was interrogated before or after formal charges had been filed.* The appellant was arrested on adult warrants and was aware that this was the reason he was taken into custody.

(6) *Methods used in interrogation.* The questioning took place in a "normal office," with two policemen but no uniformed officers present. No promise or threat was made. He was asked if he would like to make a statement and he said he would. He was then fully advised of his rights again. He was allowed to smoke a cigarette, drink a coke, and use the bathroom. The trial judge heard the actual tape recording of the statement in order to judge the quality of the interrogation. The questioning was mild and relaxed, the appellant telling them that he wanted to "get it off his chest." He was not taken to the police station for the purpose of obtaining a statement, but was advised of his rights after he indicated that he did want to talk. (It should be noted that his mother's acquiescence, as indicated by her signing the waiver-of-rights statement two days previously, had not been withdrawn.)

(7) *Length of interrogation.* The appellant was in custody for approximately 2 1/2 hours, including the time for transportation, book-in paperwork, collection of hair samples, and advising of rights. Only about 1 3/4 hours elapsed between the advising of rights and completion of the statement. We have found no cases holding this to be an inordinate length of interrogation.

(8) *Whether vel non the accused refused to voluntarily give statements on prior occasions.* The appellant had already given one statement accompanied by his mother, and had consistently expressed a willingness to give statements. There is no reason to believe that the appellant would have been more willing to give a statement had he been taken to a barred cell or a meshglass interrogation room at the Youth Development Center.

(9) *Whether the accused has repudiated an extra-judicial statement at a later date.* The appellant did not testify at the Jackson-Denno hearing or at the trial. He never repudiated any portion of his statement. There is no evidence that any of it is untrue; in fact, "a good portion of it" had been corroborated by the time of the Jackson-Denno hearing.

"The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by this court unless such determination is clearly erroneous." *Miller v. State,* 240 Ga. 110, supra, p. 112 and cit. The trial judge's determination in this case is amply supported by the evidence, and the motion to suppress was properly denied.

*Judgment affirmed. Jordan, C. J., Hill, P. J., Clarke, Smith and Gregory, JJ., concur.*

DECIDED SEPTEMBER 29, 1981.

*Irvan A. Pearlberg,* for appellant.
*Thomas J. Charron, District Attorney, James F. Morris, Assistant District Attorney, Arthur K. Bolton, Attorney General, Russell N. Sewell, Jr., Assistant Attorney General,* for appellee.