## 38595. DEAN v. THE STATE.

SMITH, Justice.

This is a murder case. Charles John Dean appeals from a conviction and sentence of life imprisonment for the June 4, 1980 slaying of Elizabeth Jill Hudson. Appellant enumerates as error the trial court's denial of his motion to suppress, the admission into evidence of statements he made while in police custody, and a ruling by the trial judge restricting his cross-examination of the state's expert witness. We affirm.

Dean and the victim were friends. They shared a two-bedroom apartment, and both Dean and Ms. Hudson worked as cab drivers for an Atlanta cab company. Company records show that Ms. Hudson picked up a fare in the west Atlanta area at about 5:15 the afternoon of June 4, the date of her death. Later that evening, between 8:30 and 10:00 p.m., the victim visited a friend who lived in Smyrna. According to the friend, Ms. Hudson "appeared troubled and just wanted to talk like friends do." The victim then stopped by the cab company headquarters on her way home. She was last seen alive at around 10:45 p.m. in a Peachtree Road liquor store where she purchased two bottles of wine.

Sometime between 10:45 that night and 10:00 the following morning, Ms. Hudson was shot to death and dumped beside a dirt road near Sweetwater Creek in rural Douglas County. The victim's clothes and body were smeared with blood, her nose was broken, her face and chest were battered, and she had been shot three times in the head. An autopsy determined the gunshot wounds to be the cause of death.

Although Ms. Hudson's body was discovered in Douglas County, several key pieces of evidence indicated that she was killed in her Decatur apartment. Police found bloodstains consistent with the

blood type of the victim on her mattress, bedroom carpet, a clock, and cigarette butts discovered in an ashtray in her bedroom. Her cab was found abandoned in a shopping center parking lot only 150 yards from the apartment. The victim's wig, normally worn by her in public, was found in her apartment, as was a bottle of wine like the one she had purchased earlier in the evening.

Dean was first questioned by police at 4:30 p.m. on Thursday, June 4, the same day Ms. Hudson's body was discovered. Dean denied any knowledge of the crime, claiming that on June 3, the night of the murder, he went off duty at 11:00 p.m., bought some beer, and went home to bed. Dean denied seeing the victim at all that evening.

The state's theory at trial was that Dean killed Ms. Hudson in their apartment, put her in his cab, drove to Douglas County, and dumped her body. The evidence introduced at trial was wholly circumstantial. Ballistics tests established that the two bullets which were removed from the victim's head were fired from a .38 caliber Smith and Wesson revolver which police found in the pocket of a coat hanging in Dean's closet. Dean later identified the coat as his, but claimed that the victim had placed the handgun in his coat for safekeeping. Bloodstains found in the apartment and in Dean's cab were matched to the victim's blood type, and dried blood found on one of Dean's undershirts was proven by enzyme tests to be consistent with that of the victim and .9% of the general population. Mud found caked on the underside of Dean's cab was tested and found to be similar to soil samples taken from a mudhole near where the body was found, and tire tracks found near the mudhole were made by tires similar to the ones on Dean's cab.

Statements made by Dean to police were inconsistent with his alibi. Dean told police officers that he had never been to the Sweetwater Creek area where the victim's body was found, but an acquaintance testified that Dean often talked about going fishing in Sweetwater Creek and was once bitten by a snake while fishing there. In addition one witness testified that, contrary to Dean's story, he had seen Dean drinking on the night of the murder. There was also testimony that Dean was looking for the victim and trying to contact her on his cab radio that night.

1. After reviewing the record, we find that the evidence presented at trial authorized a rational trier of fact to find Dean guilty of murder beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Dean enumerates as error the trial court's denial of his motion to suppress evidence obtained in a July 9 warrantless search of his cab and apartment. Police searched Dean's apartment on three separate occasions in the course of their investigation into Ms.

Hudson's death. At about 5:00 p.m. on June 6, prior to Dean's arrest, Douglas County Deputy Sheriff Goodwin and DeKalb County Investigator Dikes questioned Dean. After having Dean sign a waiver and consent to search form, the two officers made a casual walk-through search of the apartment, then briefly examined Dean's cab. Goodwin and Dikes noticed blood-like spots on an alarm clock and on cigarette butts in an ashtray in the victim's bedroom. They then walked outside to examine Dean's automobile, removing soil and fiber samples from the cab and photographing its tires. No arrest was made.

Acting on information he received later that afternoon, together with his observations while at Dean's apartment earlier that evening, Goodwin returned to arrest Dean at 11:30 that same night. At 11:45 p.m., while in the custody of DeKalb County police, Dean executed a written waiver and consent to search his apartment and automobile. This was the second such consent form signed by Dean within a 6-hour period.

After briefly interrogating Dean and obtaining the consent form, Goodwin, Dikes and two other policemen returned to the apartment at 2:00 a.m. on Saturday to perform what Goodwin later described as "a fairly preliminary search." The officers seized various items of clothing, shoes, the bloodstained cigarettes, a bottle of wine, a small quantity of marijuana, and an empty box for a .38 caliber revolver. Goodwin testified that a more thorough search was not attempted because of the late hour and because the officers were tired.

The final and most thorough search of Dean's apartment was made on Monday, June 9. Douglas County Sheriff Lee, who directed the search, testified at the suppression hearing that prior to searching Dean's apartment he again asked for and received his consent. Lee did not tape this exchange with Dean; nor was a written consent form executed. This final search unearthed much of the evidence subsequently used against Dean at trial, including bloodstains removed from the bedroom carpet, walls, mattress, and alarm clock; Dean's bloody underclothes; and the murder weapon, found in the pocket of a coat hanging in Dean's closet.

Dean contends that the June 9 warrantless search of his apartment was illegal because it was made without his consent and because he was illegally detained by police at the time of the search. We disagree, and hold that appellant's motion to suppress was properly denied by the court below.

(a) Where the state seeks to justify a warrantless search on grounds of consent, it "has the burden of proving that the consent was, in fact, freely and voluntarily given." Bumper v. North Carolina,

391 U. S. 543, 548 (88 SC 1788, 20 LE2d 797) (1968). A valid consent eliminates the need for either probable cause or a search warrant. *Hall v. State,* 239 Ga. 832 (238 SE2d 912) (1977). The voluntariness of a consent to search is determined by looking to the "totality of the circumstances," Schneckloth v. Bustamonte, 412 U. S. 218, 229 (93 SC 2041, 36 LE2d 854) (1973), including such factors as the age of the accused, his education, his intelligence, the length of detention, whether the accused was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of all these factors on the accused. In determining voluntariness, no single factor is controlling. Id. at 226.

The record in this case is devoid of any trace of mental or physical coercion of Dean by the police. The appellant is an adult who appears to be of average or above-average intelligence. Dean was repeatedly advised of his constitutional rights during his detention. It is true that Dean was in his third day of confinement when the consent for the June 9 search was given, but this fact is not controlling when one considers that he had twice previously consented to such searches, that he was not held in isolation but was visited by family members during this period, and that when asked for his consent, he reminded Sheriff Lee that he had previously executed two forms consenting to a search of his apartment and cab.

Dean argues that the inherently coercive nature of his confinement rendered his June 9 consent involuntary. But our cases establish that the fact that a defendant is held in custody at the time he consents to a search does not, standing alone, establish that such consent was coerced. See *Woodruff v. State,* 233 Ga. 840, 844 (213 SE2d 689) (1975); *Ivins v. State,* 129 Ga. App. 865, 868 (201 SE2d 683) (1973); Annot., 9 ALR3d 858, 873 (1966). Contrary to Dean's assertion, there is no constitutional requirement that police make written or taped records of all statements by an accused. We find that under the totality of the circumstances, Dean freely consented to the June 9 search.

Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal. See *Woodruff v. State,* supra, at 844. The trial judge's ruling that Dean voluntarily consented to the June 9 search is supported by the evidence. We find no error.

(b) Dean next contends that the items seized in the June 9 search should have been suppressed because he was detained illegally at the time he consented to the search. This contention is without merit.

Appellant relies on Code Ann. § 27-212, which states: "In every

case of an arrest without a warrant the person arresting shall without delay convey the offender before the most convenient officer authorized to receive an affidavit and issue a warrant. No such imprisonment shall be legal beyond a reasonable time allowed for this purpose and any person who is not conveyed before such officer within 48 hours shall be released." Dean argues that he was detained in violation of § 27-212 at the time he consented to the search; therefore, any evidence obtained in that search was the fruit of the illegal detention and should have been suppressed. We cannot agree with appellant's position on this issue.

The facts, as shown by the record on appeal, simply do not support Dean's contention that he was detained illegally when he consented to the June 9 search. On the contrary, a fair reading of the record indicates that § 27-212 was not violated in this case. Testimony by police officers at the suppression hearing one month prior to trial indicates that a warrant for Dean's arrest was obtained on June 7, well within the 48-hour limit imposed by § 27-212. Dean did not object to this testimony or offer any contrary evidence concerning the arrest warrant. On appeal, this court can only consider and correct errors which appear in the record. See *Zachary v. State,* 245 Ga. 2, 4 (262 SE2d 779) (1980). The record shows that police obtained a warrant for Dean's arrest on June 7. This procedure clearly satisfied the requirements of the statute. As interpreted by this court, § 27-212 does not require that a full adversarial hearing be held following a warrantless arrest. The statute merely seeks to insure that the arrest and continuing detention of an accused is reviewed by a neutral factfinder. See *Vaughn v. State,* 248 Ga. 127, 130 (281 SE2d 594) (1981); *Blake v. State,* 109 Ga. App. 636, 641 (137 SE2d 49) (1974). We therefore hold that § 27-212 is satisfied where, as here, police obtain an arrest warrant within 48 hours of a valid warrantless arrest. Cf. Gerstein v. Pugh, 420 U. S. 103 (95 SC 854, 43 LE2d 54) (1975).

3. In his second enumeration, Dean contends that he was not given complete Miranda warnings prior to his interrogation by police. Specifically, he maintains that warnings given him by Sheriff Lee on June 9 did not clearly state that if he wanted an attorney and could not afford one, one would be appointed for him prior to any questioning. We cannot agree with appellant's contention.

Sheriff Lee prefaced his June 9 interrogation of Dean with the following statement: "Mr. Dean, you understand that you have a right to remain silent, anything you say may be used against you in a court of law. That you have a right to an attorney and have him present while you answer questions and make a statement. If you cannot afford to hire an attorney the court will appoint one for you.

Do you understand?" Dean indicated that he understood.

We think that this warning adequately advised Dean of his right to have an attorney present before answering Lee's questions, especially in view of the fact that this warning was the fifth such warning recited to Dean within the 3-day period since his arrest. This enumeration is without merit.

4. Appellant contends that the trial court improperly limited his cross-examination of an expert witness for the state. John Wegel, a forensic serologist employed by the state crime laboratory, testified concerning the blood type and enzyme content of various blood samples recovered from Dean's apartment. On cross-examination of Wegel, counsel for appellant asked Wegel about scientific methods of determining the age of blood samples. The witness stated that, in his opinion, the degree of clotting present in a given blood sample was not a significant factor in determining blood's age. Dean's counsel asked Wegel to cite a scientific authority to support this view, and the state objected to this question as calling for inadmissible hearsay. The trial court sustained the objection.

We agree that counsel's question was improper. An expert may testify as to his opinions derived from a book, *Boswell v. State,* 114 Ga. 40, 43 (39 SE 897) (1901), and his credibility may be tested by reference to a standard treatise in his field of expertise, *State Highway Dept. v. Willis,* 106 Ga. App. 821, 824 (128 SE2d 351) (1962). But it is improper for counsel to simply ask an expert witness to name authorities which agree with his position on a particular issue. Such a question calls for the hearsay opinion of the book's author, not the expert witness' opinion. " 'Books of science and art are not admissible in evidence to prove the opinions of the experts announced therein' . . . an expert witness may testify to opinions of his own derived from books . . . but the opinions must be his own and not the opinions of the authors of the books . . ." *State Highway Dept. v. Willis,* supra, at 823-24. A cross examiner may test the credibility of a witness by inquiring of his knowledge of information sources from which an opinion was based, but he may not attempt to prove a fact by calling upon the witness to state the content of such sources. The trial judge's ruling on this point was correct, and this enumeration is without merit.

*Judgment affirmed. All the Justices concur, except Hill, P. J., who concurs in the judgment only.*

DECIDED SEPTEMBER 28, 1982 —
REHEARING DENIED OCTOBER 27, 1982.

*Dollar & Dettmering, W. O'Neal Dettmering, Jr.,* for appellant.

*William A. Foster III, District Attorney, Frank C. Winn, Assistant District Attorney, Michael J. Bowers, Attorney General, George M. Weaver, Assistant Attorney General,* for appellee.