S90A1289. THE STATE v. McBRIDE et al.
(401 SE2d 484)

CLARKE, Chief Justice.

The three defendants in this case were arrested and charged with two counts of felony murder, aggravated assault, and conspiracy to commit armed robbery. The trial court granted the defendants' motion to suppress certain physical evidence as well as the defendants' post-arrest statements, and the state appeals.

At the time of the crimes defendant Chris McBride was 16; defendant Phillip McBride was 15; and defendant Alvin Jackson was 17.

A murder and attempted armed robbery took place at a con-

venience store in Richmond County. An eyewitness to the crime described the sole assailant as a small, black, male teenager wearing a dark blue handkerchief across his face. On the evening of the crimes a witness who lived near the convenience store observed three black, male teenagers in her front yard. One of them ran off toward the convenience store, and came back a short time later stating to his two companions, either "I got it," or "I did it." The boys then ran in the direction of Fleming apartments where defendant Chris McBride lives. This witness did not recognize any of the three teenagers.

Police officers began making inquiries at the local high school the following day, and interviewed Chris McBride in the principal's office upon learning that he owned a handgun. Chris McBride initially denied owning a gun, but later admitted he had one at home which he kept concealed from his mother. The officer asked Chris if he could take the gun and "test" it to determine whether it had been "involved in any crimes." Chris agreed and an assistant principal telephoned Chris's mother to inform her that the officer was bringing Chris home. Upon their arrival the officer told Mrs. McBride about the gun, and stated that Chris had agreed to allow him to test the gun. Mrs. McBride became upset upon learning that her son owned a gun, and told the officer he could keep the gun because she did not want it in her home. Both Chris and Mrs. McBride then signed a property inventory receipt form on which there was handwritten authorization for the officer to take the gun.

While interviewing at the high school the officer spoke to defendants Phillip McBride and Alvin Jackson, both of whom stated that they were with Chris McBride at a local restaurant at the time the crimes were committed. All three defendants denied any involvement in the crimes. In another interview a student informed police that Chris McBride always wore a blue bandanna tied around his leg.

Ballistics tests indicated that the gun Chris McBride gave to police was the one used to kill the victim in question. Six police officers then went to the high school and arrested the three defendants. An arrest warrant had been obtained from the Juvenile Court for Chris McBride, but the state concedes that this warrant is invalid. No arrest warrants were obtained for the other two defendants.

Prior to receiving *Miranda* warnings defendant Alvin Jackson allegedly made a spontaneous statement that Phillip McBride, and not Chris McBride, had shot the victim. When confronted with this information, Chris McBride, who had received *Miranda* warnings, implicated Phillip in the crime. Phillip subsequently confessed to the crimes after receiving *Miranda* warnings.

1. The trial court granted Chris McBride's motion to suppress the gun, finding that there was no probable cause to execute the warrantless search. The trial court further concluded that there was no

consent to the search.

However, we find that both Chris McBride and his mother did give valid consent to the search and seizure of the gun, thus eliminating the need for either a warrant or a showing of probable cause. *Dean v. State*, 250 Ga. 77 (2) (a) (295 SE2d 306) (1982). The record shows that Mrs. McBride voluntarily consented to allow the officer to take the gun, and even asked that he not return it. That her consent may have occurred after the officer seized the gun does not render this search invalid. *State v. Sutton*, 258 Ga. 382 (369 SE2d 249) (1988).

The courts determine the voluntariness of Chris McBride's consent by examining the "totality of the circumstances," including the age of the accused, his education and intelligence, the length of detention, whether he was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of these factors. *Schneckloth v. Bustamonte*, 412 U. S. 218, 229 (93 SC 2041, 36 LE2d 854) (1973); id. at 80. In this case Chris McBride was a few days away from his 17th birthday and was in the 10th grade of high school. He was interviewed by the officer in question three times in the presence of an assistant principal, with each interview lasting no longer than seven minutes. He was not under arrest at the time and was not advised of his constitutional rights. There is no evidence to show physical punishment and no evidence of any psychological impact of these factors. The only evidence in the record affirmatively shows that Chris voluntarily agreed to allow the officer to take his gun and test it. To hold otherwise is clearly erroneous.

2. The trial court concluded that the warrantless arrests of Chris McBride, age 16, Phillip McBride, age 15, and Alvin Jackson, age 17, were unlawful because there was no probable cause to support them. The trial court further found that certain violations of the Juvenile Code, OCGA § 15-11-17 et seq. rendered the arrests of Chris and Phillip unlawful. The trial court therefore concluded that all of the post-arrest statements made by the defendants must be excluded under the rationale of *Dunaway v. New York*, 442 U. S. 200 (99 SC 2248, 60 LE2d 824) (1979).

a) We hold that there was probable cause to arrest Chris McBride for the crimes in question. The assailant was described by an eyewitness as wearing a blue handkerchief across his face. A blue bandanna was subsequently found behind the convenience store where the crimes occurred. Another student informed police officers that Chris always wore a blue bandanna tied around his leg. Further, ballistics testing showed that the gun Chris gave to the police was the weapon used to shoot the victim. These facts provided sufficient probable cause to justify Chris's arrest.

We further hold that there was probable cause to arrest Phillip McBride and Alvin Jackson. In interviews with police prior to their arrests, both Phillip and Alvin stated they had been with Chris at a local restaurant at the time the crimes were committed. A witness told police that she observed three young black men, approximately the ages of the defendants in question, in her yard shortly before the shooting. One of them left the group and ran to the convenience store. He returned a short time later, stating either, "I've got it," or "I did it." The three then ran in the direction of Chris McBride's home. These facts, considered together, established probable cause to support the arrests of Alvin Jackson and Phillip McBride.

b) It is undisputed that the three defendants were arrested, without warrants, at the high school. Compare OCGA § 15-11-17 (a) (2) and (b). They were immediately taken to police headquarters and interrogated individually. Chris and Phillip were each interrogated in the presence of a juvenile court officer.

The trial court found that with regard to Chris McBride and Phillip McBride, the police violated OCGA § 15-11-19 (a) (4) in that they failed to take the juveniles immediately before the superior court. The trial court also found that the officers violated OCGA § 15-11-19 (c) in that they failed to contact the parents of the juveniles. Additionally, the undisputed evidence shows that the officers refused to allow Phillip McBride to speak to a family member who contacted the police station on Phillip's behalf.

While we do not approve of the police tactics in this case, this court has, in substantially similar circumstances, refused to apply a per se exclusionary rule to incriminatory statements for such violations of the Juvenile Code. *Marshall v. State*, 248 Ga. 227 (282 SE2d 301) (1981).

Rather, this court has held that the issue to be considered is whether there was a knowing and intelligent waiver by the juvenile of his constitutional rights in making the incriminating statements. *Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976); *Marshall*, supra at 228. In determining this issue nine factors are to be considered. Id.

1) *Age of the accused.* At the time of questioning Chris McBride was 16 and Phillip McBride was 15. Age alone is not a determinative factor, and our courts have approved statements from defendants of even younger years. See *Williams v. State*, 238 Ga. 298 (232 SE2d 535) (1977) (14 years); *C. R. T. v. State*, 148 Ga. App. 628 (252 SE2d 58) (1979) (11 years) and *Marshall v. State*, supra, (14 years).

2) *Education of the accused.* The record shows only that both juveniles were in the 10th grade of high school.

3) *Knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney.* The record indi-

cates that the substance of the charges was adequately explained to both juveniles. Neither Chris nor Phillip testified at the hearing on the motion to suppress. The undisputed evidence presented at that hearing was that both were advised of the nature of the charges against them and understood their constitutional rights. Both juveniles signed waiver of rights forms.

4) *Whether the accused was held incommunicado or allowed to consult with relatives or an attorney.* The record indicates that neither juvenile requested the presence of an attorney or relative during questioning. However, it is also undisputed that a relative of Phillip McBride's was not allowed to communicate with him while he was at police headquarters.

5) *Whether the accused was interrogated before or after formal charges had been filed.* The record is not clear as to whether formal charges had been filed against the juveniles at the time of interrogation. However, it is not disputed that both were under arrest at the time of interrogation.

6) *Methods used in interrogation.* The transcripts of the interrogations show that a juvenile court officer was present during interrogation. No threats or promises were made to the juveniles. Both made incriminatory statements under normal questioning.

7) *Length of interrogation.* The interrogation of Chris McBride lasted less than one hour. The trial court found that the interrogation of Phillip McBride lasted 32 minutes.

8) *Whether the accused refused to voluntarily give statements on prior occasions.* There is no indication that either juvenile refused to give statements on prior occasions. In each previous statement, however, the juveniles denied participating in the crimes.

9) *Whether the accused repudiated an extrajudicial statement at a later date.* The trial court found that neither juvenile has repudiated any of the statements he made during his interrogation.

The trial court found that under the totality of these circumstances neither Chris McBride nor Phillip McBride made a knowing waiver of his rights. We do not agree. Rather, our review of the record before us leads us to conclude that the juveniles did knowingly and intelligently waive their constitutional rights, and voluntarily made the statements in question.

c) As the trial court made no findings with regard to the voluntariness of Alvin Jackson's statements, we do not reach this issue.

3. In count one the indictment charged the three defendants with felony murder, the underlying felony being aggravated assault. Count two charged them with felony murder, the underlying felony being conspiracy to commit armed robbery. Count three charged them with aggravated assault, while count four charged conspiracy to commit armed robbery.

a) The trial court ruled that where there is one murder victim and the indictment alleges two counts of felony murder with different underlying felonies, the cumulative effect of the indictment diminishes the presumption of innocence. The trial court ordered the state to elect between the two counts of felony murder.

While we agree with the trial court that a defendant may not be sentenced for two murders where there is only one victim, *Smith v. State*, 258 Ga. 181 (2) (366 SE2d 763) (1988), where there are multiple underlying felonies, the state is not required to elect between them when charging the defendant with felony murder. OCGA § 16-1-7. Where there is evidence that multiple crimes have been committed, it does not diminish the presumption of innocence to allege each of them in the indictment. The appropriate manner for charging felony murder in instances where more than one underlying felony is alleged is to indict for one count of felony murder, and enumerate the multiple underlying felonies.

b) The trial court also held that the offenses of aggravated assault and conspiracy to commit armed robbery, as alleged in the indictment, are the same as a matter of fact, and therefore merge. The trial court ordered the state to elect between these two counts before proceeding to trial.

We cannot agree with the trial court. Under the facts alleged in the indictment, the crime of conspiracy to commit armed robbery would be complete upon proof of an agreement and proof that Chris McBride gave the gun to Phillip to commit the crime. OCGA § 16-4-8. These are not the same facts necessary to prove the crime of aggravated assault, OCGA § 16-5-21, and therefore the crimes do not merge.

*Judgment reversed. Clarke, C. J., Smith, P. J., Bell, Benham, Fletcher, JJ., and Judge G. Mallon Faircloth concur; Hunt, J., concurs specially; Weltner, J., not participating.*

HUNT, Justice, concurring specially.

I write separately with respect to Divisions 1, 2 and 3 because I question whether the majority has applied the appropriate standard of appellate review. On review, we do not, as implied by the majority, decide the factual components leading to the determination whether a defendant has voluntarily consented to a search or voluntarily made a statement. Granted, there are legal components of these decisions to which we owe the trial judge no deference and which we are free, on review, to decide.[1] And to be sure, there is often confusion about what is law and what is fact. Our decisions nonetheless should strive to

---

[1] For an interesting review of this subject matter as it pertains to consents to search, see the case of *United States v. Garcia*, 890 F2d 355 (11th Cir. 1989).

eliminate that confusion.

The trial judge did not base his suppression of the gun and ammunition on a factual determination that neither McBride nor his mother consented to the search. Rather, he suppressed this evidence because the officer did not explain the reasons for, and the consequences of the search, and did not advise McBride and his mother, in advance, of their Fourth Amendment rights, such as the right to require a search warrant. Thus, the trial judge reached a conclusion of *law* that the consent was involuntary. We owe no deference to this legal conclusion, and I would hold expressly that there was no legal barrier to the admission of this evidence. Accordingly, while I disagree with the majority that we are authorized to find any facts regarding whether consent was voluntary,[2] I concur with the result, reversing the trial court's exclusion of the evidence.

Likewise, the trial court's decision to suppress the statements was not based on a factual determination that the statements were made involuntarily. Credibility was not an issue because the evidence was undisputed and the defendants offered no testimony. Rather, the trial court reached a conclusion of *law* that the statements were barred because they were the product of an illegal arrest and because of juvenile code violations. These, too, were erroneous conclusions, and the statements should have been admitted.

DECIDED FEBRUARY 18, 1991 —
RECONSIDERATION DENIED MARCH 27, 1991.

*Michael C. Eubanks*, District Attorney, *Richard E. Thomas*, Assistant District Attorney, *Michael J. Bowers*, Attorney General, for appellant.

*Sam B. Sibley, Jr., B. H. Barton, Benjamin A. Jackson*, for appellees.

---

[2] Unless clearly erroneous, the trial court's ruling on disputed facts and credibility at a suppression hearing must be accepted on appeal. *Dean v. State*, 250 Ga. 77, 80 (2a) (295 SE2d 306) (1982).