## S03A0519. MURRAY v. THE STATE.
(578 SE2d 853)

Thompson, Justice.

Quincy Lamar Murray was convicted of malice murder and possession of a firearm during the commission of a felony in connection with the shooting death of Mathis Freeman.[1] On appeal, Murray asserts that his custodial statement was improperly admitted into evidence, and that the trial court erred in discharging a juror over objection by the defense. Finding no error, we affirm.

Murray, Deborah Ann Peterson, and the victim, Mathis Freeman, were involved together in a drug transaction. Believing that Freeman had shortchanged him, Murray told Freeman in Peterson's presence, "I hope you've got all my money or . . . I'm going to kill you." Murray then grabbed Peterson by the neck and also threatened to kill her if she were to reveal anything. Murray walked away with Freeman and the two argued about the drug deal whereupon Murray

---

[*] See *Gaither v. Gibby*, 267 Ga. 96, 97 (475 SE2d 603) (1996).

[1] The shooting occurred on September 9, 1994. Murray was indicted on November 1, 1994 and charged with malice murder, felony murder while in the commission of an aggravated assault, and possession of a firearm during the commission of the felony of malice murder. Trial commenced on August 7, 1995, and on the following day, Murray was convicted as charged. He was sentenced on August 25, 1995 to life imprisonment for murder, plus five consecutive years for the weapon offense. Murray sought and was granted an out-of-time appeal by order dated October 17, 2000. A motion for new trial was filed on October 25, 2000, amended on October 29, 2002, and denied on November 4, 2002. A notice of appeal was filed on November 27, 2002. The case was docketed in this Court on December 16, 2002, and was submitted for a decision on briefs on February 10, 2003.

killed Freeman by shooting him in the face at close range, and then cutting him repeatedly with a razor. Immediately thereafter, Murray disclosed to other friends that he killed Freeman.

1. The evidence was sufficient to enable a rational trier of fact to have found Murray guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Murray, who was 15 years of age at the time of his custodial interrogation, asserts that the resulting statement was neither knowingly nor voluntarily given.

[A]ge alone is not determinative of whether a person can waive his rights. Instead, the question of waiver must be analyzed by a consideration of several factors. These are "(1) age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge . . . and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date."

*Riley v. State*, 237 Ga. 124, 128 (226 SE2d 922) (1976). See also *State v. McBride*, 261 Ga. 60 (2) (b) (401 SE2d 484) (1991).

At a *Jackson v. Denno*[2] hearing it was established that Murray was enrolled in the ninth grade in school at the time he was questioned by police and that he had no difficulty in understanding the proceedings. It was also shown that he was fully advised of his *Miranda* rights, that he acknowledged that he understood those rights and the charges against him, and that he executed a waiver of rights. He was not offered any hope of benefit for his statement or threat of injury for failure to comply. Although formal charges had not yet been filed, Murray was informed at the beginning of the interview that he was in custody and being charged with Freeman's murder. He did not ask to speak with his parents nor was he denied access to a telephone or prevented in any way from contacting family members. The interrogation lasted thirty-six minutes; during ten of those minutes, Murray listened to a statement made by the friend to whom Murray confessed the crime. Murray never repudiated his cus-

---

[2] 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

todial statement; in fact, he testified in his own defense at trial, giving the same explanation, i.e., that he shot the victim accidentally and when it appeared that he was still alive, Murray cut him repeatedly with a razor blade.

Considering the totality of the circumstances, we are satisfied that Murray's custodial statement was knowingly and voluntarily given under *Riley* and its progeny, and that the trial court did not abuse its discretion in admitting it into evidence. See *James v. State*, 275 Ga. 387 (2) (565 SE2d 802) (2002); *McKoon v. State*, 266 Ga. 149 (2) (465 SE2d 272) (1996).

3. Prior to taking Murray into custody, the investigating officers went to his home and informed his mother that they were looking for her son and why they wanted to talk to him. They gave her a telephone number to contact them, but heard nothing more from her. The officers located Murray several hours later and he was brought in for questioning. Murray asserts that his custodial statement is rendered involuntary and inadmissible because his mother was not notified and was not present while it was made. However, we have consistently held that the custodial statement of a juvenile is not rendered inadmissible merely because it was made in the absence of a parent. *Gilliam v. State*, 268 Ga. 690 (6) (492 SE2d 185) (1997); *Marshall v. State*, 248 Ga. 227 (2) (282 SE2d 301) (1981). And, as shown above, Murray was not denied access to his mother; instead, he never asked to contact her.

4. Murray asserts that the trial court erred in excusing a juror over objection by the defense.

The record shows that after publishing verdicts of guilty on all charges, the jurors were polled. Juror Howze responded, "no," when asked whether the verdict was his, whereupon the jurors were returned to the jury room for further deliberations. Several minutes later, the foreman sent a communication to the court suggesting that juror Howze had violated his oath by discussing the case outside the jury room, and asking that Howze be replaced with an alternate.

The court held an evidentiary hearing at which juror Howze revealed that earlier that afternoon, someone approached him in the hallway outside the courtroom and asked if he was a juror; he replied affirmatively; and the unidentified person volunteered that the defendant "wouldn't have the heart to shoot someone." Other jurors stated that during the course of deliberations, Howze commented on the defendant's good character based on this communication. Over objection by the defense, juror Howze was replaced by an alternate and the deliberations resumed. Murray was subsequently convicted on all counts.

The trial court has discretion to replace a juror with an alternate at any time in the trial, whether before or after submission to the

jury. OCGA § 15-12-172. The trial court concluded under the totality of the circumstances, the juror's testimony (that the out-of-court communication did not affect him) was not credible. This ruling "had a sound basis in that it served the legally relevant purpose of 'preserv(ing) public respect for the integrity of the judicial process.' [Cit.]" *Miller v. State*, 261 Ga. 679, 680 (6) (410 SE2d 101) (1991). It follows that the trial court properly exercised its broad discretion in excusing the juror.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 27, 2003.

*Paul W. David*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.