A05A0692. STONE v. THE STATE.
(610 SE2d 684)

BLACKBURN, Presiding Judge.

Convicted on three counts of aggravated child molestation, Joshua Stone appeals, arguing that the trial court erred in admitting his

---

[11] *Hemidi v. State*, 245 Ga. App. 417, 420 (4) (537 SE2d 804) (2000).

confession to police. We hold that evidence supported the trial court's finding that Stone voluntarily and intelligently waived his constitutional rights. Accordingly, we affirm.

Construed in favor of the verdict, the evidence shows that in December 2000, Stone's brother (younger by four years and mentally handicapped) informed their parents, a physician, and police that Stone had forced him to engage in acts of oral and anal intercourse with Stone, with the last act in November 2000. A medical exam showed physical signs consistent with the younger brother's statements.

A few days later, police brought 15-year-old Stone (accompanied by his father) in for questioning. Obtaining permission from the father to interview Stone, two policemen read Stone his *Miranda* rights and interrogated him alone for twenty-seven minutes (all of which was recorded on audiotape), during which time Stone confessed to more than seventy acts of oral and anal intercourse with the younger brother. Stone stated that most of the acts took place after Stone turned 13, with the most recent act occurring only weeks prior to the interview. Police also questioned Stone about alleged acts of intercourse with a young girl, which Stone vehemently denied. When police refused to believe him about the young girl, Stone invoked his right to terminate the questioning. Stone returned home with his father. Three days later, police arrested Stone on multiple charges of aggravated child molestation.

Before trial, Stone sought to exclude the audiotaped statement to police, arguing that he did not intelligently and voluntarily waive his constitutional rights. After a *Jackson-Denno* hearing, the court ruled the statement admissible. During trial, the court overruled Stone's renewed objection to the statement. Stone's sole enumeration on appeal is the admission of the statement.

*Riley v. State*[1] squarely addressed the factors to be considered in determining whether a juvenile in giving a statement voluntarily and knowingly waived his constitutional rights. "In our opinion, the question of a voluntary and knowing waiver depends on the totality of the circumstances and the state has a heavy burden in showing that the juvenile did understand and waive his rights." Id. at 128. *Riley* adopted nine factors for a court to review.

[A]ge alone is not determinative of whether a person can waive his rights. Instead, the question of waiver must be analyzed by a consideration of several factors. These are (1)

---

[1] *Riley v. State*, 237 Ga. 124 (226 SE2d 922) (1976).

age of the accused; (2) education of the accused; (3) knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent; (4) whether the accused is held incommunicado or allowed to consult with relatives, friends or an attorney; (5) whether the accused was interrogated before or after formal charges had been filed; (6) methods used in interrogations; (7) length of interrogations; (8) whether vel non the accused refused to voluntarily give statements on prior occasions; and (9) whether the accused has repudiated an extra judicial statement at a later date.

(Punctuation omitted.) Id. See *Murray v. State*.[2] "The trial court sits as the factfinder in a *Jackson-Denno* hearing and its resolution of factual issues will be upheld by the appellate court unless it is clearly erroneous." *James v. State*.[3]

(1) *Age of the accused.* At the time of questioning, Stone was 15. This age passed muster in *Riley*, supra at 127, and in *Murray*, supra at 397 (2). "[O]ur courts have approved statements from defendants of even younger years. See *Williams v. State*[4] (14 years); *C. R. T. v. State*[5] (11 years) and *Marshall v. State*[6] (14 years)." *State v. McBride*[7] (15 years). See also *Martin v. State*[8] (13 years).

(2) *Education of the accused.* Stone had completed the eighth grade. Before questioning Stone, the police asked his mother whether he was in any special needs classes. She told them that he had had a speech class in first grade and a remedial reading class in middle school. *Marshall*, supra at 229 (3) (2), noting that the accused was in the eighth grade of a school for emotionally disturbed children, upheld the trial court's decision to admit the accused's statement. See *Brown v. State*[9] ("the fact that [the accused] had a ninth grade education or was enrolled in special education classes alone is not determinative"). Stone also gave detailed narrative responses to the questions, not simple monosyllabic answers.

A defense expert witness testified that Stone had the mental age of a twelve-year-old, a fourth-grade reading comprehension level, and a verbal comprehension level of a nine-year-old. His IQ was 89.

[2] *Murray v. State*, 276 Ga. 396, 397 (2) (578 SE2d 853) (2003).

[3] *James v. State*, 275 Ga. 387, 388 (2) (565 SE2d 802) (2002).

[4] *Williams v. State*, 238 Ga. 298, 302 (1) (232 SE2d 535) (1977).

[5] *C. R. T. v. State*, 148 Ga. App. 628, 629 (252 SE2d 58) (1979).

[6] *Marshall v. State*, 248 Ga. 227, 229 (3) (1) (282 SE2d 301) (1981).

[7] *State v. McBride*, 261 Ga. 60, 63 (2) (b) (1) (401 SE2d 484) (1991).

[8] *Martin v. State*, 256 Ga. App. 527, 529 (2) (a) (568 SE2d 754) (2002).

[9] *Brown v. State*, 253 Ga. App. 1, 2 (1) (b) (557 SE2d 464) (2001).

Assuming that the court accepted this testimony at face value, we note that the juvenile defendants in *Marshall*, supra at 229 (3) (2) (IQ of 86), and *Williams*, supra at 301 (1) (IQ between 69 and 84), had lower IQs than Stone. See also *Willis v. State*[10] (IQ of 62); *Goodwin v. State*[11] (IQ of 58). The juvenile defendant in *Williams*, supra at 301 (1), only had a third grade reading comprehension level. And the adult defendants in *Flowers v. State*[12] and in *Goodwin*, supra at 341, only had a mental age of eight years and nine years respectively. Yet in each of these cited cases, the appellate court upheld the trial court's decision to admit the defendant's statement.

(3) *Knowledge of the accused as to both the substance of the charge and the nature of his rights to consult with an attorney and remain silent.* Although Stone was not arrested or charged at the time of the interrogation, the police explained to him that the suspected crime was child molestation. They informed him of his *Miranda* rights, including the right to remain silent and to consult with an attorney. Stone executed a written waiver of these rights. Such indicates Stone had sufficient knowledge. See *Murray*, supra at 397 (2); *McBride*, supra at 63-64 (2) (b) (3). Indeed, Stone exhibited a working knowledge of his rights when he affirmatively terminated the interview.

Contrary to Stone's argument, it was not necessary that Stone's father be separately advised of Stone's *Miranda* rights. *Williams*, supra at 302 (1); *Riley*, supra at 128. Nor was it necessary that Stone or his father be informed that Stone would be prosecuted as an adult. *Brown*, supra at 2 (1) (a).

(4) *Whether the accused was held incommunicado or allowed to consult with relatives, friends, or an attorney.* During the interview, Stone made no request to see or speak with any relatives, friends, or an attorney. See *Murray*, supra at 397 (2) ("[accused] did not ask to speak with his parents nor was he denied access to a telephone or prevented in any way from contacting family members"); *McBride*, supra at 64 (2) (b) (4). "[T]he custodial statement of a juvenile is not rendered inadmissible merely because it was made in the absence of a parent." *Murray*, supra at 398 (3).

(5) *Whether the accused was interrogated before or after formal charges had been filed.* Stone was neither arrested nor charged at the time he came in for questioning; indeed, he left the interview with his father and returned home. He was arrested and charged three days after the interview.

---

[10] *Willis v. State*, 263 Ga. 597, 599 (436 SE2d 204) (1993).

[11] *Goodwin v. State*, 236 Ga. 339, 341 (223 SE2d 703) (1976).

[12] *Flowers v. State*, 265 Ga. 688, 689 (2) (461 SE2d 533) (1995).

(6) *Methods used in the interrogation.* The trial court reviewed the audiotape and transcript carefully and found that the methods employed in the interrogation were not coercive. As evidence supported this finding, we cannot say it is clearly erroneous. No threats or promises were made. See *McBride*, supra at 64 (2) (b) (6). The police's insistence that Stone tell the truth was appropriate. See *Brown*, supra at 2 (1) (c). The police's raising their voices during the latter portion where Stone adamantly maintained that he had had no sexual contact with the young girl had no effect on Stone. He denied the charges, terminated the interview, and went home with his father. Any error in addressing Stone was harmless.

(7) *Length of the interrogation.* The interrogation here lasted 27 minutes. This is not coercive. See *Murray*, supra at 397 (2) (36 minutes); *McBride*, supra at 64 (2) (b) (7) (32 minutes); *Martin*, supra at 529 (2) (a) (40 minutes). *Marshall*, supra at 230 (3) (7) held that an interrogation more than three times longer than here was not "an inordinate length of interrogation."

(8) *Whether the accused refused to voluntarily give statements on prior occasions.* Stone did not refuse to give a statement on any prior occasion. See *McBride*, supra at 64 (2) (b) (8). This was the first time police spoke to him about the matter.

(9) *Whether the accused has repudiated an extra judicial statement at a later date.* At trial, Stone repudiated many of the statements he had made to police during the interrogation and admitted only that he had sexual contact with the younger brother a total of three times, all prior to August 1998.

Based on the totality of the circumstances, the trial court found that Stone's statements to police were voluntary and that he voluntarily and knowingly waived his constitutional rights. As evidence supported this conclusion, it was not clearly erroneous.

*Judgment affirmed. Miller and Bernes, JJ., concur.*

DECIDED FEBRUARY 22, 2005.

*Richard K. Murray*, for appellant.

*T. Joseph Campbell, District Attorney, Sharon M. Fox, Assistant District Attorney*, for appellee.