A02A1474. IN THE INTEREST OF B. Y., a child.
A02A1584. IN THE INTEREST OF D. A. B., a child.
(570 SE2d 689)

ANDREWS, Presiding Judge.

B. Y. and D. A. B. appeal from orders of the juvenile court transferring their prosecutions for the offenses of aggravated assault and attempted armed robbery to the superior court pursuant to OCGA § 15-11-30.2 (a). Because both prosecutions are based on the same factual circumstances, these separate appeals have been consolidated for consideration in this opinion. As set forth below, we find no abuse of discretion in the transfer orders and affirm.

1. The juvenile court heard evidence that B. Y. and D. A. B., both of whom were 16 years old at the time of the alleged offenses, participated in a home invasion and attack on the victims in which robbery was the motive. One of the victims was knocked to the floor with a baseball bat, was hit repeatedly with the bat while she lay helpless on the floor, and suffered severe injury requiring numerous stitches to close a gash on her head. OCGA § 15-11-30.2 (a) (3) and (4) provide in relevant part that the juvenile court may transfer a case to the appropriate court if the juvenile court in its discretion determines there are reasonable grounds to believe the child committed the alleged delinquent acts, that the child is not committable to an institution for the mentally retarded or mentally ill, that the interests of the child and the community require the child be placed under legal restraint and the transfer be made, and that the child was at least 15 years of age at the time of the alleged delinquent conduct.

There was evidence to support the juvenile court's determination that all of the statutory criteria for transfer were satisfied. There was evidence that B. Y. and D. A. B. were over 15 years of age at the time of the alleged delinquent conduct, that they committed the alleged delinquent acts, and that neither child was committable to an insti-

tution for the mentally infirm. Moreover, the State did not seek the transfers based on claims that B. Y. and D. A. B. were not amenable to treatment in the juvenile system, and the juvenile court did not rely on that ground in the transfer orders. Rather, the court determined that, given the seriousness of the alleged offenses, the interests of the children and the community mandated transfers for prosecution in the superior court. *In the Interest of S. B. B.*, 234 Ga. App. 778 (507 SE2d 879) (1998); *In the Interest of C. D. B.*, 214 Ga. App. 655, 656-657 (449 SE2d 1) (1994); *In the Interest of A. G.*, 265 Ga. 481 (458 SE2d 343) (1995). We find no abuse of discretion in the juvenile court's determination.

2. B. Y. contends the juvenile court erred by denying his motion to suppress evidence of statements he made admitting he was present when the attack occurred and identifying others involved in the attack, and further erred by considering this evidence in determining to transfer his case. In the motion, B. Y. contended the statements should have been excluded because they were made before he was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

We find no error in the trial court's conclusion that the statements were admissible without *Miranda* warnings because B. Y. was not in custody when he made the statements. The *Miranda* warnings are required to be given only when a suspect has been taken into custody or has been deprived of freedom in any significant way. *Driver v. State*, 248 Ga. App. 439, 440 (546 SE2d 549) (2001). B. Y. voluntarily came to the police station with the knowledge and consent of his mother to answer questions about a separate case in which B. Y. complained he was the victim of police misconduct. The attack at issue occurred a few days earlier, but the identities of the attackers were unknown, and police were in the process of investigating the case. The officer who questioned B. Y. about the police misconduct claim did not think B. Y. was a suspect in the attack case, but did think B. Y., who was a friend of the victims' teenage son, might know something about the attack or who may have been involved. While B. Y. was being questioned in the misconduct case, the officer received a telephone call informing him B. Y. had been seen wearing a hat similar to one that had been found near the scene of the attack. After the officer finished gathering information about B. Y.'s allegations of police misconduct, he showed the hat to B. Y. and asked if he knew anything about the attack case. B. Y. said no but immediately looked down at the floor as tears welled up in his eyes. The officer told B. Y. that, based on his emotional response to the question, he believed he did know something about the attack. B. Y. told the officer that he knew the name of the person who hit the victim and the name of another person who was involved. The officer asked B. Y. if he was

there, and when B. Y. said yes, the officer stopped the questioning and called B. Y.'s mother, whom he had known for over 20 years. B. Y.'s mother came to the police station within a few minutes and was told by the officer that B. Y. said he was present during the attack and knew the other persons involved. The mother then proceeded to question B. Y. about the attack in the presence of the officer, and B. Y. described the attack and identified D. A. B. and another person, an adult, as participants in the attack. At that point, B. Y. was detained, and the officer gave B. Y. the *Miranda* warnings.

Evidence showed that B. Y. voluntarily met with the officer at the police station to give information about his claim that he was a victim of police misconduct. No evidence was presented which would compel the conclusion that B. Y. was in custody or that he was deprived of his freedom in any significant way when he made the statements to the officer. That the statements were given while B. Y. was at a police station, or that the officer suspected B. Y. knew something about the attack when he questioned him, does not require a finding that B. Y. was in custody or otherwise deprived of his freedom when he gave the statements. *In the Interest of C. D. B.*, 214 Ga. App. at 656; *Hendrix v. State*, 230 Ga. App. 604, 605 (497 SE2d 236) (1998). Since the juvenile court's admission of the statements as voluntary and noncustodial was supported by evidence and not clearly erroneous, it will not be disturbed on appeal. Id. at 606. The juvenile court did not err by denying the motion to suppress and by considering the statements B. Y. made in response to the officer's questions.

Moreover, B. Y. admitted his presence at the attack and identified the others involved in response to questions posed by his mother. Based on B. Y.'s statements identifying others involved in the attack, police detained an adult on charges he participated in the attack, who then gave a statement indicating B. Y. and D. A. B. participated in the attack. D. A. B. also gave a statement to police indicating B. Y. participated in the attack. Police also obtained a statement from another person who said B. Y. told her months prior to the attack that he was planning to rob the victims, but at the time she did not think he would actually do so. There was no evidence that any of these subsequent statements were inadmissible or involuntarily obtained by coercive police tactics. It follows that, even if B. Y.'s statements in response to the officer's questions were considered custodial and inadmissible for lack of *Miranda* warnings, the subsequent statements provided a sufficient basis for the juvenile court's transfer order as to B. Y. and were not rendered inadmissible as the tainted fruit of B. Y.'s prior unwarned statements. *Oregon v. Elstad*, 470 U. S. 298, 314, 317-318 (105 SC 1285, 84 LE2d 222) (1985); *Moore v. State*, 263 Ga. 11, 12 (427 SE2d 766) (1993); *Metheny v. State*, 197 Ga. App. 882, 885-886 (400 SE2d 25) (1990).

3. Based on the statements made by B. Y., police detained D. A. B., gave him the *Miranda* warnings, and obtained his statement admitting his participation in the attack and identifying B. Y. and the detained adult as the other participants. D. A. B. contends his custodial statement was not voluntary because he was detained for a period of time without notification to his parents, and that the juvenile court erred by refusing to suppress the statement and by considering it as evidence in determining to transfer his case.

The following nine factors are considered in determining whether a juvenile knowingly and intelligently waived his constitutional rights in making an incriminating statement while in police custody. *Riley v. State,* 237 Ga. 124, 128 (226 SE2d 922) (1976).

(1) *The age of the accused.* D. A. B. was 16 years old at the time he was questioned, and our courts have approved statements obtained from younger juveniles. *Williams v. State,* 238 Ga. 298 (232 SE2d 535) (1977).

(2) *The education of the accused.* The record shows that D. A. B. was a high school student entering the eleventh grade.

(3) *The knowledge of the accused as to the substance of the charge and nature of his rights to consult with an attorney.* D. A. B. did not testify at the hearing on the motion to suppress, but the record indicates that, prior to giving the statement, D. A. B. was informed of the nature of the charges and his constitutional rights under *Miranda* and signed a form waiving his rights.

(4) *Whether the accused was held incommunicado or allowed to consult with relatives or an attorney.* The record shows D. A. B. was in custody for about one hour and forty-five minutes prior to being questioned and that no relative or attorney was present during the questioning, although D. A. B.'s mother arrived about a half-hour after the questioning. Other evidence showed that D. A. B. had the means and opportunity to make contact by telephone while he was in custody, and there was no evidence that he was prevented from doing so.

(5) *Whether the accused was interrogated before or after formal charges had been filed.* It is not clear from the record when formal charges were filed, but D. A. B. was under arrest when he was questioned.

(6) *The methods used in interrogation.* The record shows that a juvenile court officer was present during the questioning, that D. A. B. agreed to answer the questions, and that no threats, coercion, or offers of a benefit or reward were used to induce answers.

(7) *The length of the interrogation.* The record shows there was a brief interrogation lasting approximately 15 to 20 minutes.

(8) *Whether the accused refused to voluntarily give statements on prior occasions.* There is no indication in the record that D. A. B. refused to give a statement on any prior occasion.

(9) *Whether the accused repudiated an extrajudicial statement at any later date.* Nothing in the record shows that D. A. B. repudiated any of the statements he made.

A review of the record in light of these factors supports the juvenile court's conclusion that D. A. B. knowingly and intelligently waived his constitutional rights and voluntarily made the statements at issue. *State v. McBride*, 261 Ga. 60, 63-64 (401 SE2d 484) (1991). The juvenile court did not err by denying D. A. B.'s motion to suppress and by considering his statement as evidence to support the transfer order. Moreover, as set forth in Divisions 1 and 2, supra, the juvenile court had ample evidence apart from D. A. B.'s statement to support its conclusion that D. A. B. participated in the attack and that transfer of his case was appropriate.

*Judgments affirmed. Phipps and Mikell, JJ., concur.*

DECIDED SEPTEMBER 3, 2002.

*Almand & Wiggins, James L. Wiggins*, for appellant (case no. A02A1474).

*Hall & Hall, Clayton A. Hall*, for appellant (case no. A02A1584).

*Timothy G. Vaughn, District Attorney, Russell P. Spivey, Assistant District Attorney*, for appellee.