683 S.E.2d 130 (2009)
In the Interest of D.M., a child.
No. A09A0941.
Court of Appeals of Georgia.
August 6, 2009.
*132 Jackson & Schiavone, George T. Jackson, Savannah, for appellant.
Larry Chisolm, Dist. Atty., Jeffrey S. Hendrix, Asst. Dist. Atty., for appellee.
BERNES, Judge.
D.M., a 16-year-old male, was charged in the juvenile court with multiple drug-related crimes in addition to several serious traffic offenses. Following a hearing, the juvenile court transferred D.M.'s case to the superior court so that he could be treated as an adult offender. D.M. appeals from the transfer order,[1] contending that the juvenile court erred by finding that he was not amenable to treatment in the juvenile system and that the interests of D.M. and the community required the transfer of jurisdiction to the superior court. We disagree and affirm.
Before transferring jurisdiction from juvenile to superior court, the juvenile court must find that
there are reasonable grounds to believe that the child committed the delinquent act alleged; the child is not committable to an institution for the mentally retarded or mentally ill; the interests of the child and the community require that the child be placed under legal restraint and the transfer be made; and the child was at least 15 years of age at the time of the alleged delinquent conduct.
(Punctuation and footnote omitted.) In the Interest of S.K.K., 280 Ga.App. 877, 877-878, 635 S.E.2d 263 (2006). See OCGA § 15-11-30.2(a)(3), (4)(A). On appeal, "[t]he function of [this] court is limited to ascertaining whether there was some evidence to support the juvenile court's determination," and absent an abuse of discretion, we will affirm the order transferring jurisdiction. (Punctuation and footnote omitted.) In the Interest of S.K.K., 280 Ga.App. at 878(1), 635 S.E.2d 263.
Here, D.M. challenges the juvenile court's finding that the interests of D.M. and the community required the transfer of jurisdiction to the superior court. He does not contest that there was sufficient evidence to establish the other statutory factors for transferring the case to superior court.
The evidence presented at the transfer hearing showed that during the early morning hours of July 3, 2008, an investigator with the Chatham-Savannah Counter Narcotics Team responded to a call that a patrol officer's vehicle had been hit and the driver of the offending vehicle had fled the scene. The patrol officer discovered marijuana in the abandoned vehicle.
The subsequent investigation led the investigator to believe that D.M. had been driving the vehicle at the time it struck the patrol car. His investigation further led him to believe that D.M.'s mother was making false claims that the car had been stolen in order to protect her son.[2]
The investigator and other officers went to D.M.'s residence in order to conduct a search of D.M.'s older brother's room, who had signed a Fourth Amendment waiver as a condition of his probation in a separate matter. D.M.'s mother directed the investigator to a room claiming it to be that of the older brother, but the investigator believed the room to be vacant based upon its appearance. He nonetheless found two digital scales and a small amount of marijuana in the room. The investigator obtained the mother's consent to search an adjacent room, where he located more scales, a small amount of marijuana, *133 and plastic baggies. D.M. was asleep in a third room at the time of the search.
After D.M.'s mother refused to give consent for the officers to search the rest of the house, the investigator sought and obtained a search warrant. During that process, D.M. and his mother left the residence. Prior to allowing her to leave, the officers conducted a search of D.M.'s mother and confiscated $677 cash.
While executing the warrant, the officers discovered 50.5 grams of marijuana and gallon-sized plastic bags containing marijuana residue in the room where D.M. had been sleeping, and a marijuana joint in the bedroom of D.M.'s mother. They also recovered more digital scales, six in total, at least one of which was used to weigh items more than a pound.
The investigator obtained an arrest warrant for D.M. based upon the marijuana and other contraband found in his bedroom. Although the investigator then went by D.M.'s residence at least twice a day at various times during the day and night for a period of two to three weeks, the investigator was never able to locate D.M. Finally, the investigator received information through an informant that D.M. was staying at his sister's apartment. As a result, the investigator began conducting surveillance at that location.
On the morning of August 28, 2008, the investigator observed D.M. leave the apartment and get into a vehicle. The investigator followed D.M. and, after running the tag number, determined that the vehicle had been stolen. He thereafter called for backup and requested that a marked patrol car initiate a stop of D.M.'s vehicle. When the marked patrol car located and pulled behind D.M., D.M. fled in the vehicle and led the police on a high-speed chase. Although the patrol car ultimately stopped chasing D.M., D.M.'s flight ended after he struck a Ford pickup truck and crashed sidelong into a Mercury Mountaineer. D.M. struck the Mountaineer with such velocity that it caused that vehicle to skid several feet sideways before flipping over on its side. The Mountaineer contained two passengersa 61-year-old woman and her pregnant daughterboth of whom sustained substantial injuries from the impact.
D.M. fled from the scene of the accident and was apprehended in the restroom of a nearby restaurant. The investigator recovered 53.5 grams of marijuana from the trash-can in the restroom. A subsequent search of D.M.'s sister's apartment revealed 19.3 grams of marijuana, numerous marijuana joints, three digital scales, $650 cash, numerous plastic baggies, and marijuana residue "everywhere."
The state filed two delinquency petitions against D.M., alleging serious injury by motor vehicle, fleeing or attempting to elude a police officer driving, possession of marijuana with intent to distribute, possession of marijuana, possession of a drug-related object, two counts of theft by receiving, hit and run, operation of a vehicle with a suspended license, and several other misdemeanor traffic offenses. The state then moved to transfer the case to the superior court.
During the transfer hearing, the state also presented evidence that D.M. had twice been adjudicated delinquent for drug-related crimes. In June 2007, D.M. was placed on probation after being adjudicated delinquent for possession of less than one ounce of marijuana. He had a large amount of cash on him when he was arrested for that offense. On the same day that D.M. was discharged from probation for the first offense, he was arrested for possession of marijuana with the intent to distribute, possession of drug-related objects, and driving on a suspended license. He had $505 cash and two mobile phones on his person at the time of his arrest for those crimes. In November 2007, he was again adjudicated delinquent and placed on probation. As a condition of probation, he attended and successfully completed 30 days of a short-term drug treatment program.
D.M.'s probation officer testified at the transfer hearing. She confirmed that D.M. performed very well in school[3] and stated that he was "wonderful" the first time she *134 supervised him on probation. She nonetheless expressed "extreme[ ] concern[ ]" about D.M.'s apparent involvement with drug activity since he was originally discharged and "fe[lt] strongly that [he had] exhibited behavior that this is his lifestyle." Based in part on the severity of the instant charges, she concluded that D.M. presented "a risk to the community" and recommended that the case be transferred to the superior court.
The juvenile court granted the state's motion to transfer the case to the superior court. In its transfer order, the juvenile court held that
[t]he interests of the child and the community require that the transfer be made and that the child be placed under legal restraint.... The seriousness of the offenses, when combined with [D.M.'s] age, and his previous history of delinquent offenses demand greater supervision than that which can be offered in the juvenile justice system. [D.M.] was 16 years of age when the offenses occurred. All of the offenses of which [D.M.] has been accused involve drugs. He was placed on probation for the second time in November 2007, for possessing marijuana with the intent to distribute. Less than eight months later, he faces charges for possessing marijuana with the intent to distribute. Furthermore, after having his license suspended, he seriously injured two innocent victims while driving. [D.M.'s] actions were particularly reckless and devoid of any regard for the safety and well-being of the citizens in this community....
[D.M.'s] careless refusal to assist the individuals he injured, his lack of regard for the consequences of his actions, and the apparent repeated execution of drug related crimes, while on probation, is disturbing. The rehabilitative efforts of the [j]uvenile [c]ourt have failed to curtail his involvement in serious criminal activity.
[D.M.] has been subject to numerous treatment efforts and sentencing options, as well. He has already served time at the Short-Term Treatment Program. The facts of these cases indicate that [D.M.] is constantly surrounded by significant amounts of controlled substances, drug selling paraphernalia, and large sums of cash.
[D.M.] needs long term supervision, and the supervision of the [j]uvenile [c]ourt could last no longer than his 21st birthday. [D.M.] is not amenable to treatment under the juvenile system. Furthermore, the community has an overwhelming interest to see the perpetrators of these types of crimes being treated as adults.
1. D.M. first argues that the juvenile court's ruling was erroneous because his commendable performance in school demonstrated that he is amenable to treatment through the juvenile system. "Whether a child is amenable to treatment in the juvenile system is a factor to consider in determining the child's and the community's interests." (Citation omitted.) In the Interest of J.B.H., 241 Ga.App. 736, 739(2), 527 S.E.2d 18 (1999).
As an initial matter, we note that, although it is unclear from the state's motion whether it sought the transfer based upon non-amenability, the juvenile court made an express finding that D.M. was not amenable to treatment. Where "the juvenile court relies in part on the child's non-amenability to treatment in ordering the transfer, the transfer order ... must reflect why the child is not amenable to treatment." (Citation omitted.) State v. M.M., 259 Ga. 637, 639-640(2)(b), 386 S.E.2d 35 (1989). See In the Interest of J.B., 234 Ga.App. 775, 776(2), 507 S.E.2d 874 (1998).
As evidenced by the order quoted at length above, the juvenile court in the instant case included very specific factual findings which support its conclusion that D.M. was not amenable to treatment in that court. And the record supports this determination. During the probation officer's testimony at the transfer hearing, the juvenile court inquired as to whether there were any other services that may be available to D.M. through the juvenile system. The probation officer responded:
He's already gone through drug treatment.... [H]e's done over 60 hours of community service. He's been on house arrest. He's on a monitor. He's done essays. He's done the community works *135 program. He's paid supervision fees. He's served 30 days in a short-term program. I mean, the only thing that he has not received would be anger management and individual counseling....
Faced with this evidence, we cannot say that the juvenile court abused its discretion in concluding that D.M. was not amenable to treatment in the juvenile court. See In the Interest of J.N.B., 263 Ga. 600, 600-601(1), 436 S.E.2d 202 (1993) (finding of non-amenability supported by juvenile court's conclusion that the juvenile system did not have the resources to provide the child the appropriate treatment for the necessary period of time); In the Interest of W.N.J., 268 Ga.App. 637, 640-641(2), 602 S.E.2d 173 (2004) (child determined non-amenable to treatment based in part upon the repetition of her reckless behavior despite her involvement in the juvenile court); In the Interest of K.S.K., 216 Ga.App. 257, 259(2), 454 S.E.2d 165 (1995) (non-amenability based upon the child's "habitual acts of delinquency").
We agree that D.M.'s performance in school is honorable and strongly encourage him to continue along that path. However, evidence that D.M. is intelligent and performs well in school does not demand a finding or necessarily demonstrate that he is amenable to the treatment solutions offered in the juvenile court.
2. D.M. next argues that "any interests of the community in having [him] face prosecution as an adult in superior court for the alleged acts, when he has demonstrated that he is amenable to treatment, will never outweigh the interests of the child." First, as held in Division 1, despite D.M.'s impressive grades, the evidence supported the juvenile court's conclusion that D.M. was not amenable to treatment in the juvenile system. Second, D.M.'s assertion is simply inconsistent with existing Georgia law. "[E]ven if there is evidence that the child may be amenable to treatment, the juvenile court may still transfer the case if it finds that the amenability factor is outweighed by the interest of the community in treating the child as an adult." (Citation omitted). In the Interest of W.N.J., 268 Ga.App. at 640(2), 602 S.E.2d 173.
And finally, the record supports the juvenile court's conclusion that the community's interest in a transfer outweighed D.M.'s interest in remaining in the juvenile court. The escalating nature of D.M.'s alleged criminal conduct, all while he remained on probation, authorized the juvenile court to find that D.M. poses a serious threat to the community. In the Interest of B.Y., 257 Ga.App. 253-254(1), 570 S.E.2d 689 (2002) (court can consider the severity of the offenses as a factor in determining whether a transfer is appropriate); In the Interest of S.B.B., 234 Ga.App. 778, 779(2), 507 S.E.2d 879 (1998) (same). That D.M. remains surrounded by significant amounts of drugs and cash and possibly operates with the support ofor at least under the blind eye ofadults is another factor which counseled in favor of a transfer. See In the Interest of C.D.B., 214 Ga.App. 655, 656(2), 449 S.E.2d 1 (1994). Lastly, D.M.'s age and the fact that he has exhausted most of the treatment options offered in the juvenile system seemingly without any deterring impact upon his criminal conduct authorized the juvenile court to find that it did not have enough time or sufficient resources to provide D.M. with adequate treatment. See In the Interest of J.N.B., 263 Ga. 600, 600-601(1), 436 S.E.2d 202 (1993); In the Interest of S.K.K., 280 Ga. App. at 879-880(2), 635 S.E.2d 263.
We further note that, contrary to D.M.'s assertion, the possibility that he may receive less favorable treatment in the superior court than he would in the juvenile court does not violate his due process rights under the Fourteenth Amendment to the United States Constitution. See In the Interest of J.J.S., 246 Ga. 617, 618(1), 272 S.E.2d 294 (1980) ("Treatment as a juvenile is not an inherent right but one granted by the state legislature[;] therefore, the legislature may restrict or qualify that right as it sees fit, as long as no arbitrary or discriminatory classification is involved.") (citation and punctuation omitted). The legislature has approved the transfer of certain juvenile cases to the superior court upon specific findings by the juvenile court which, in this case, have been made. See id.; In the Interest of S.K.K., 280 *136 Ga.App. at 880(3), 635 S.E.2d 263. Under these circumstances, the juvenile court did not abuse its discretion in concluding that the interests of the community would be better served if this case is transferred to the superior court. See In the Interest of W.N.J., 268 Ga.App. at 640-641(2), 602 S.E.2d 173; In the Interest of K.S.K., 216 Ga.App. at 258-259(2), 454 S.E.2d 165.
Judgment affirmed.
SMITH, P.J., and PHIPPS, J., concur.
NOTES
[1] An order transferring a case from juvenile to superior court is a final order that is directly appealable. See Rivers v. State, 229 Ga.App. 12, 13(1), 493 S.E.2d 2 (1997).
[2] D.M.'s mother reported the car stolen approximately two hours after the vehicle had been involved in the accident with the patrol car. In the police report, she claimed that the car had been missing since 11:00 p.m. the previous evening. The phone records from D.M.'s phone found inside the vehicle after the hit and run, however, reflected that D.M. had placed a call from that phone at 1:00 a.m. the morning of the accidentmore than three hours after the car had allegedly been stolen.
[3] D.M. admitted a school report card indicating that he maintained an 85.2 grade-point average during his senior year and ranked 47 of 118 in his class.