**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 17, 2019**

# In the Court of Appeals of Georgia

A19A1359. THE STATE v. DEAN.

DILLARD, Presiding Judge.

The State appeals the Superior Court of Fulton County's decision to transfer this case against Ghohaun Dean to juvenile court. Specifically, the State argues that the superior court erred in (1) its application of OCGA § 15-11-560 and OCGA § 15-11-562 by making clearly erroneous factual findings, and (2) failing to properly weigh all of the factors it was required to consider under OCGA § 15-11-562. Because we agree with the State that the superior court made an unsupported factual finding as to one of the transfer factors or failed to fully consider that factor, we vacate and remand for additional proceedings consistent with this opinion.

The record shows that on February 28, 2018, Dean was indicted[1] on one count of aggravated sodomy[2] and one count of sexual battery of a child under the age of 16.[3] The indictment alleged that Dean committed aggravated sodomy by performing a "sexual act involving [his] sexual organ and the anus of [the alleged victim], a child under ten (10) years of age, by penetrating her anus with his male sex organ[,]" and sexual battery by making "physical contact with the buttocks of the body of [the alleged victim], a child under the age of 16 years, without her consent." These acts were allegedly committed in August and September of 2017, respectively.

According to the arrest affidavit, the above incidents occurred when Dean was 14 years old and the alleged victim, A. D., was two years old. At the time, Dean was staying overnight at his grandmother's house with his two brothers. A. D. is a sister to Dean's two brothers, but she and Dean have no biological connection. Dean allegedly committed aggravated sodomy when A. D. was sleeping alone while her father was at work. The next morning, when A. D.'s father changed her diaper, she

---

[1] Dean was previously indicted on these same charges in October 2017, but was reindicted in February 2018 to reflect the preferred spelling of his name. The prior indictment was *nolle prossed*.

[2] OCGA § 16-6-2 (A) (2).

[3] OCGA § 16-6-22.1 (D).

2

whimpered, and he found what appeared to be blood and semen in the diaper. A subsequent medical examination confirmed that A. D.'s anus sustained tearing and lacerations, indicating that she had been sodomized by someone. After receiving stitches and spending several days in the hospital, A. D. went to stay with her mother, to whom she confided that Dean hurt her.

Following the indictment, Dean moved to transfer his case from superior court to juvenile court. Dean argued that—due to a history of mental health and emotional problems, including a learning disability and having lower cognitive function—he "should not be held to the accountability that is inherent in the prosecution of juveniles in [s]uperior [c]ourt." And prior to ruling on the motion, the superior court ordered pretrial services to prepare a transfer report, which was to contain additional information it could use to decide whether to grant Dean's motion. Then, following a series of hearings on the matter, on June 16, 2018, the superior court transferred the action to juvenile court. This appeal by the State follows.[4]

1. The State argues that the superior court erred in its application of OCGA § 15-11-560 and OCGA § 15-11-562 by making clearly erroneous factual findings.

---

[4] The State is entitled to directly appeal in cases such as this one. *See* OCGA § 15-11-560 (e) ("Any such transfer shall be appealable by the State of Georgia pursuant to Code Section 5-7-1.").

Our Juvenile Code provides that juvenile courts, with limited exception,

have concurrent jurisdiction with the superior court over a child who is alleged to have committed a delinquent act which would be considered a crime if tried in a superior court and for which an adult may be punished by loss of life, imprisonment for life without possibility of parole, or confinement for life in a penal institution.[5]

The exception to this concurrent jurisdiction provides that superior courts have "exclusive original jurisdiction over the trial of any child 13 to 17 years of age who is alleged to have committed" murder, murder in the second degree, voluntary manslaughter, rape, aggravated sodomy, aggravated child molestation, aggravated sexual battery, armed robbery with a firearm, aggravated assault upon a public safety officer that is committed using a firearm, and aggravated battery upon a public safety officer.[6]

Notwithstanding the exclusive original jurisdiction of superior courts over these types of juvenile cases, a superior court is authorized to transfer some of them

---

[5] OCGA § 15-11-560 (a).

[6] OCGA § 15-11-560 (b).

4

to juvenile court[7]—*i.e.*, those involving voluntary manslaughter, aggravated sodomy, aggravated child molestation, aggravated sexual battery, and aggravated assault and battery on a public safety officer.[8] But before ordering such a transfer, the superior court *must* first consider—but is not limited to considering—the following criteria:

> (1) [t]he age of such child; (2) [t]he seriousness of the alleged offense, especially if personal injury resulted; (3) [w]hether the protection of the community requires transfer of jurisdiction; (4) [w]hether the alleged offense involved violence or was committed in an aggressive or premeditated manner; (5) [t]he impact of the alleged offense on the alleged victim, including the permanence of any physical or emotional injury sustained, health care expenses incurred, and lost earnings suffered; (6) [t]he culpability of such child including such child's level of planning and participation in the alleged offense; (7) [w]hether the alleged offense is a part of a repetitive pattern of offenses which indicates that such child may be beyond rehabilitation in the juvenile justice system; (8) [t]he record and history of such child, including

---

[7] OCGA § 15-11-560 (e) ("After indictment, the superior court may after investigation transfer to the juvenile court any case involving a child 13 to 17 years of age alleged to have committed any act described in paragraph (3), (5), (6), (7), (9), or (10) of subsection (b) of this Code section. In considering the transfer of such case, the court shall consider the criteria set forth in Code Section 15-11-562. Any such transfer shall be appealable by the State of Georgia pursuant to Code Section 5-7-1. Upon such a transfer by the superior court, jurisdiction shall vest in the juvenile court and jurisdiction of the superior court shall terminate.").

[8] *See* OCGA § 15-11-560 (e); OCGA § 15-11-562 (a).

5

experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions, and other placements; (9) [t]he sophistication and maturity of such child as determined by consideration of his or her home and environmental situation, emotional condition, and pattern of living; (10) [t]he program and facilities available to the juvenile court in considering disposition; and (11) [w]hether or not a child can benefit from the treatment or rehabilitative programs available to the juvenile court.[9]

The State argues that the superior court erred in its application of the foregoing statutes by making erroneous factual findings in support of its decision to transfer Dean's case from superior court to juvenile court. In reviewing a superior court's decision to transfer jurisdiction, "the function of this Court is limited to ascertaining whether there was some evidence to support the [superior] court's determination, and absent an abuse of discretion, we will affirm the order transferring jurisdiction."[10]

The State specifically takes issue with the superior court's conclusions that (1) the alleged victim had made a full recovery, and (2) Dean would benefit from

---

[9] OCGA § 15-11-562 (a) (1)-(11).

[10] *In the Interest of K. S.*, 348 Ga. App. 440, 441 (823 SE2d 536) (2019) (punctuation omitted); *accord In the Interest of T. S.*, 336 Ga. App. 352, 352-53 (785 SE2d 32) (2016); *In the Interest D. C.*, 303 Ga. App. 395, 395 (1) (693 SE2d 596) (2010).

proceeding in the juvenile justice system. We will consider both of these findings in turn.

(a) *The Victim's Recovery*. The State contends that no facts were presented during the superior court's consideration of the motion to transfer to support its finding that A. D. "has apparently recovered." The State acknowledges that its representative at one of the hearings on the motion characterized A. D. as having no permanent physical injuries, but argues that the testimony presented by a physician who examined A. D. did not support a finding that the child had fully recovered. Specifically, the physician testified that A. D.'s initial injuries were among the most severe he had ever observed. And at the time of a reexamination a few weeks after the incident, the physician noted that A. D. had "improved," but her mother and grandmother reported that the child was still having difficulties with and exerting resistance to being bathed or changed. A. D. also resisted the follow-up examination. The State later argued that the child's resistance to being bathed or changed was evidence of an ongoing emotional injury.

On appeal, the State maintains that the superior court entirely disregarded the potential psychological injury inflicted upon A. D. when it only asked the assistant district attorney if the child had any permanent physical injuries, and specifically

noted that it was "not talking about psychological injuries."[11] Indeed, in its order granting the motion to transfer, the superior court concluded that A. D. "suffered no permanent physical injuries." The court also noted that A. D. "received a few weeks of counseling immediately following the incident" but her "mother elected to discontinue the counseling." And in the transfer report created by pretrial services at the superior court's request, the pretrial officer indicated that she had spoken to A. D.'s mother, who informed her that the child "still randomly mentions the incident and that counseling had occurred for a few weeks initially, but [she] discontinued due to [A. D.] not participating at a level that seemed helpful at that time."

It appears, then, that A. D. has sustained ongoing psychological injuries, and the superior court's findings of fact and comments on the record suggest that it only considered the permanence of physical injuries when making its decision. Suffice it to say, to the extent that the court concluded that A. D. had "apparently recovered," the record evidence of psychological recovery appears to be far more nuanced. And as a result of the court's failure to reach a conclusion on this particular aspect of the question of permanent injuries, we vacate this portion of its order and remand for

_____

[11] To this specific question, the State responded that there were no "permanent physical injur[ies]," and the injuries that remained after the incident had been treated with no other physical injuries "to this day."

8

additional findings of fact as to the potential evidence of ongoing psychological or emotional injury to A. D. In doing so, the court is to consider the "impact of the alleged offense on the alleged victim, *including the permanence of any* physical *or emotional injury sustained*, health care expenses incurred, and lost earnings suffered."[12]

(b) *Benefit of Proceeding in Juvenile Justice System.* The State further argues that the superior court made unsupported findings of fact that Dean would be better served by the services available in the juvenile justice system. In particular, the State takes issue with the portion of the superior court's order that concludes as follows:

> [T]he Defendant will have access to services and programs that are age appropriate and provided in an environment with similarly situated peers. . . His lack of behavioral issues in custody and positive view of school suggest to the Court that the Defendant could derive some benefit from the options available in the juvenile setting.

But as Dean points out, there is *some* evidentiary support for this finding in the pretrial services transfer report, which noted that Dean was progressing in school and exhibiting no behavioral issues. This same report also contemplated the possible outcomes and treatment options that would be available if the case proceeded in the

---

[12] OCGA § 15-11-562 (a) (5) (emphasis supplied).

9

juvenile court as opposed to the superior court. Accordingly, contrary to the State's contentions, this finding by the superior court is not wholly without evidentiary support in the record.[13]

2. Next, the State maintains that the superior court erred by failing to properly weigh all of the factors it was required to consider under OCGA § 15-11-562 prior to deciding to transfer the case to juvenile court. The State argues that the court's order contains no consideration of three factors, specifically: (1) whether protection of the community requires transfer, (2) whether the alleged offense involved violence or was committed in an aggressive or premeditated manner, and (3) the child defendant's culpability, including the level of planning and participation in the alleged offense. We will address each of these factors in turn.

---

[13] *See In the Interest of J. M. S.*, 334 Ga. App. 142, 143 (1) (778 SE2d 391) (2015) ("[T]he function of this Court is limited to ascertaining whether there was some evidence to support the juvenile court's determination [to transfer], and absent an abuse of discretion, we will affirm the order transferring jurisdiction." (punctuation omitted)), *overruled on other grounds by In the Interest of J. H.*, 340 Ga. App. 733 (797 SE2d 185) (2017); *In the Interest of D. M.*, 299 Ga. App. 586, 586-87 (683 SE2d 130) (2009) ("On appeal, the function of this court is limited to ascertaining whether there was some evidence to support the juvenile court's determination, and absent an abuse of discretion, we will affirm the order transferring jurisdiction." (punctuation omitted)).

10

(a) *Protection of the Community*. The State asserts that the superior court's only reference to the protection of the community is "an offhand note" that Dean's incarceration is "unlikely to lead to a positive outcome for the community," and that the court only considered this in terms of Dean's rehabilitation. But the superior court's full finding is as follows:

> If the Defendant is convicted and sentenced to the minimum sentence authorized in the superior court[,] he will be almost 40 years old when he is released. Given his personal history, susceptibility to peer influences and low intellectual functioning, the Court finds that such an outcome is unlikely to result in rehabilitation of the Defendant and is unlikely to lead to a positive outcome for the community or society.

As made clear by the context of the superior court's finding, the court was considering the protection of the community in the future should Dean be tried in superior court, incarcerated with adults, and released at nearly 40 years old. And the record reflects that Dean has borderline intellectual functioning, a troubled history experiencing and witnessing violence and neglect as a young child, grew up with little to no positive influences in his immediate family, and is susceptible to negative peer influence. Thus, in considering whether the "protection of the community

11

require[d] transfer of jurisdiction,"[14] the court concluded that the *future* protection of the community required transfer of the case. Accordingly, we cannot say that the court wholly failed to consider the protection of the community, especially when the court noted that it had considered, *inter alia*, the "relevant criteria set forth in OCGA § 15-11-562[.]"[15]

(b) *Violence and Aggression of the Alleged Offense.* Once again, the superior court noted that it considered the criteria set forth in OCGA § 15-11-562, and there was testimony as to the extent of the injuries A. D. suffered in the alleged aggravated sodomy. Indeed, at the hearing on the motion, the State argued that the seriousness of A. D.'s injuries evinced that the act was both violent and aggressive.

---

[14] OCGA § 15-11-562 (a) (3).

[15] *See In the Interest of K. S.*, 348 Ga. App. at 450 (3) (holding that juvenile court did not err in its consideration of OCGA § 15-11-562 factors in ordering transfer to superior court when "the juvenile court stated in its transfer order that it had considered all of the statutory criteria in determining that transfer of . . . case was appropriate" and the court's findings of fact were supported by at least some evidence in the record); *In the Interest of T. S.*, 336 Ga. App. at 357-58 (2) (holding that the "record, as a whole, reflects that the court engaged in the appropriate balancing test in finding that a transfer was warranted in this case," when court heard evidence as to each required factor, including that gang activity "increased the danger to the community").

In the transfer order, the superior court noted that there was "no question that the acts the Defendant is alleged to have committed were serious and caused grave harm to the child victim at the time they were committed." And given the evidence presented as to the extent of A. D.'s injuries, the State's argument regarding same, and the superior court's findings as to the harm caused and the seriousness of the offense, the record demonstrates that the court considered the violence and aggression of the alleged offense.[16]

(c) *The Alleged Defendant's Culpability.* Finally, the State argues that the superior court failed to consider Dean's level of planning and participation in the alleged offense, but concedes that "no evidence was presented as to [Dean's] level of planning[.]" Nevertheless, the State asserts that, "there can be little doubt that [Dean] alone chose to commit the crime" because "no evidence presented suggests others' involvement." But once again, the superior court asserted that it considered each of the relevant factors in OCGA § 15-11-562 in its transfer order. Specifically, the court recognized that there "were no witnesses" and that, despite also living with two other

---

[16] *See In the Interest of T. S.*, 336 Ga. App. at 358 (2) ("At the transfer hearings, evidence was adduced as to each statutory factor, and the court heard argument as to each factor."). There was no evidence presented as to premeditation, which the State acknowledges in its brief.

13

male siblings, it was Dean who allegedly "anally penetrated [A. D.] while they were both at their grandmother's house." The court also found that there "were multiple males in the home with the child when the offense occurred," but that Dean "was identified as the alleged perpetrator based upon an audio recording captured by the victim's mother in which the child" stated that Dean hurt her. Thus, the court considered that only Dean had been implicated in the alleged offense, *i.e.*, that Dean acted alone.[17]

In sum, although the majority of the State's contentions are unavailing, because the superior court did not make complete findings of fact as to one factor (*i.e.*, the permanence of any psychological injury), we vacate and remand for additional proceedings consistent with this opinion.

*Judgment vacated and case remanded with direction. Gobeil and Hodges, JJ., concur.*

---

[17] *See In the Interest of T. S.*, 336 Ga. App. at 357 (2) ("At the transfer hearings, evidence was adduced as to each statutory factor, and the court heard argument as to each factor.").